JANE PETRE, Special Adm'r of the Estate of James J. Petre, Jr., Plaintiff-Appellant, v. VINCENT A. KUCICH *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—03—2641

Opinion filed February 17, 2005.

David A. Axelrod and Stacey L. Leinheiser, both of David A. Axelrod & Associates, P.C., of Chicago, for appellant.

Francis R. Petrek, Jr., and Krista R. Frick, both of Bollinger, Ruberry & Garvey, of Chicago, for appellees.

JUSTICE THEIS delivered the opinion of the court:

This is the second time this case has come before the appellate court. Plaintiff Jane Petre, special administrator of the estate of James

J. Petre, Jr.,[1] filed this medical malpractice action against defendants Vincent A. Kucich, M.D., Dr. Kucich's practice group, Cardiovascular Consultants, S.C., d/b/a Cardiovascular Medical Associates, S.C. (CMA), St. Francis Hospital and Health Center, Dr. Robert E. Applebaum, Dr. Hershel Wix, Dr. David Looyenga, Dr. Robert Prentice, Dr. George Gustafson, and Hickory Cardiology Associates, Ltd. Plaintiff sought recovery for injuries sustained by Petre following coronary artery bypass surgery performed by Dr. Kucich at St. Francis Hospital and Health Center in Blue Island, Illinois. After the surgery, a postoperative wound infection developed, ultimately necessitating the removal of Petre's sternum and additional reconstructive surgery.

In this appeal, following the second trial where the jury found in favor of Kucich and CMA (collectively, defendants), plaintiff argues (1) the trial court erred in failing to enter a judgment notwithstanding the verdict when defendants' expert witnesses admitted the facts and opinions supporting plaintiff's case; (2) the trial court erred by admitting evidence concerning the negligence of subsequent treaters; (3) the court should have granted plaintiff a new trial as a result of prejudice arising from the admission of evidence concerning negligence of subsequent treaters; (4) the court erred in failing to give the jury the sole proximate cause instruction, Illinois Pattern Jury Instructions, Civil, No. 12.04 (2000) (hereinafter IPI Civil (2000) No. 12.04); (5) the court erred in denying plaintiff's motion for a mistrial after a defense witness violated an *in limine* order barring evidence of Petre's history of smoking; and (6) the court erred in admitting opinion evidence not disclosed under Supreme Court Rule 213 (177 Ill. 2d R. 213). For the following reasons, we reverse and remand for a new trial.

Prior to the first trial in 2000, plaintiff settled with St. Francis Hospital for $5,000 and dismissed it from this action. Plaintiff also voluntarily dismissed Drs. Wix, Looyenga, Prentice, Applebaum, and Gustafson, and Hickory Cardiology Associates, Ltd. (collectively, Hickory defendants). Following a jury trial, the trial court entered judgment for plaintiff and against Kucich and CMA in the amount of $465,000.[2] Defendants then appealed, arguing that the trial court erred in excluding evidence of the alleged negligence of the previously dismissed Hickory physicians, thus preventing defendants from assert-

---

[1]The original plaintiffs were James J. Petre, Jr., and Jane Petre. Jane Petre, special administrator of the estate of James J. Petre, Jr., substituted as plaintiff in this case after James Petre died from liver cancer on August 31, 2000.

[2]This amount was later reduced to $460,000 to reflect the $5,000 settlement with St. Francis Hospital.

ing the "empty chair" defense, *i.e.*, from claiming that postoperative negligence on the part of the dismissed Hickory defendants was the sole proximate cause of Petre's injuries. *Petre v. Kucich*, 331 Ill. App. 3d 935, 937, 771 N.E.2d 1084, 1086 (2002). Defendants also contended that the trial court erred in refusing to tender the appropriate jury instruction on sole proximate cause, IPI Civil (2000) No. 12.04.

In the first appeal, the appellate court reversed and remanded for a new trial, finding that the trial court "erred as a matter of law both in precluding evidence of the dismissed Hickory physicians' conduct and in refusing to give the appropriate jury instruction, thereby denying defendants a fair trial." *Petre*, 331 Ill. App. 3d at 938, 771 N.E.2d at 1087. In so holding, this court relied on *Leonardi v. Loyola University*, 168 Ill. 2d 83, 658 N.E.2d 450 (1995), which held that a defendant's answer which denies that an injury was the result of or caused by the defendant's conduct is sufficient to permit the defendant to present evidence that the injury was the result of another cause. *Leonardi*, 168 Ill. 2d at 94, 658 N.E.2d at 455. A defendant has the right not only to rebut evidence tending to show that the defendant's acts were negligent and the proximate cause of the plaintiff's injuries, but also to attempt to establish that the conduct of a third party, or some other causative factor, is the sole proximate cause of the plaintiff's injuries. *Leonardi*, 168 Ill. 2d at 101, 658 N.E.2d at 459. The sole proximate cause defense does not distract the jury and merely focuses the jury's attention on the plaintiff's duty to prove that the defendant's conduct was a proximate cause of the plaintiff's injury. *Leonardi*, 168 Ill. 2d at 94, 658 N.E.2d at 456. The *Petre* court found that Dr. Kucich and CMA each filed an answer denying that Petre's injury was the result of their conduct and thus, based on *Leonardi*, held that both defendants should have been allowed to present evidence of the Hickory physicians' alleged postoperative negligence on the issue of proximate cause. *Petre*, 331 Ill. App. 3d at 943, 771 N.E.2d at 1091. Additionally, the court held that "[b]ecause the disputed evidence should have been allowed, *** the trial court abused its discretion in refusing to give the relevant jury instruction on sole proximate cause (IPI Civil 3d No. 12.04)." *Petre*, 331 Ill. App. 3d at 943, 771 N.E.2d at 1091.

On remand and prior to the second trial in 2003, plaintiff submitted three motions *in limine* attempting to bar defendants from submitting any evidence concerning the negligence of the previously dismissed defendants. Pursuant to this court's ruling in *Petre*, however, the trial court denied these motions and allowed the defense to elicit evidence during the second trial that the actions of the dismissed Hickory defendants, and not these defendants, were the proximate cause of Petre's injuries.

At the second trial, Dr. Kucich, a board-certified cardiothoracic surgeon, testified that he was Petre's primary cardiothoracic surgeon when he performed Petre's coronary artery bypass graft surgery on November 26, 1996, nine days after Petre suffered a heart attack. Kucich also consulted on Petre's case until he was discharged from the hospital by Dr. Looyenga on December 2, 1996. Dr. Kucich had no further clinical contact with Petre following his discharge. Because bypass patients by definition are at risk of contracting a sternal wound infection, antibiotics are given prior to, during and after surgery prophylactically. Prior to his surgery, Petre received two antibiotics, clindamycin and ceftazidime, for eight days to treat his aspiration pneumonia, and Dr. Kucich continued this medication during and after Petre's surgery. Kucich testified he made the decision to continue with clindamycin and ceftazidime, which prevent and treat certain staph infections, and not to give Petre another antibiotic, vancomycin. Dr. Kucich testified that he gave vancomycin only to patients who were allergic to penicillin or who were already receiving that drug for a preexisting infection. Vancomycin was not indicated for Petre because he did not fall into either category. Additionally, vancomycin may cause a drop in blood pressure and ear and kidney problems and only provided coverage for very specific bacteria. One such type of bacteria is methycillin-resistant staph epidermis (MRSE), which is resistant to certain antibiotics, including the ones Petre received, but can be treated by vancomycin. Kucich later testified in his own defense that his use of clindamycin and ceftazidime, rather than vancomycin, was within the standard of care.

Petre later developed a sternal wound infection caused by MRSE. Kucich agreed that from a retrospective point of view, Petre was predisposed to MRSE bacteria due to his prolonged course of antibiotics.

Dr. Barry Fields, a board-certified cardiothoracic surgeon, testified for plaintiff that Petre was hospitalized again from January 8 to 16, 1997, after Dr. Dreyfuss diagnosed a sternal wound infection caused by MRSE. Petre was seen by Dr. Hirsch, an infectious disease specialist, and doctors from Hickory Cardiology Associates. Due to this infection, infected portions of Petre's sternum and chest wall were removed on January 10 and Petre received vancomycin. Dr. Wix, Petre's cardiologist, continued to care for Petre following his bypass surgery and his discharge on December 2, 1996. Fields testified that the standard of care required that Petre receive vancomycin before and during surgery to prevent an infection from MRSE. He testified that after receiving eight days of the other antibiotics and a course of steroids, Petre was predisposed to a MRSE infection. If Petre had

received vancomycin before surgery, it would be "highly unlikely" that Petre would have contracted a MRSE infection. Dr. Fields stated that Dr. Kucich deviated from the standard of care in not prescribing vancomycin to Petre. He testified that vancomycin should be given to bypass patients who were allergic to penicillin, who had an ongoing treatment of vancomycin or who had received a course of antibiotics which was known to change the skin flora and potentially produce MRSE. Petre fell into the third category and required vancomycin. The medical records indicated that a culture of Petre's wound was taken before he was discharged from the hospital the first time and the results were obtained on December 5, 1996, indicating that Petre had an infection caused by MRSE. Dr. Fields opined that Petre's infection began at the time of surgery. Fields testified that it was below the standard of care for Kucich not to follow up with Petre after the surgery.

Dr. Fields also opined that Dr. Wix and his practice group, Hickory Cardiology Associates, had the opportunity to identify and treat this infection earlier than January 8, 1997, and that they should have recognized this infection "much earlier." Fields opined that even if the infection had been diagnosed earlier, Petre would still have required six weeks of intravenous vancomycin treatment. Had the infection been diagnosed in December, the vancomycin therapy may have cured the infection, but Petre likely would have needed additional surgery to remove some infected tissue. Dr. Fields opined that Dr. Kucich, Dr. Applebaum, Dr. Wix, Dr. Looyenga and St. Francis Hospital failed to meet the requisite standard of care in treating Petre. He stated that Kucich, CMA, and Applebaum were responsible for causing Petre's infection.

On cross-examination, Dr. Fields agreed that infection is a risk of bypass surgery and that even with antibiotics, a doctor cannot prevent every infection. He also agreed that 60% of patients with an infection similar to Petre's would lose part of their sternum absent any negligence. He testified that a patient could develop a sternal wound infection even if vancomycin was used. Fields stated that St. Francis Hospital deviated from the standard of care by failing to respond appropriately to cultures which identified the infection and failed to provide timely and responsible surgical follow-up after Petre's discharge. He opined that Dr. Wix deviated from the standard of care in his postoperative treatment of Petre and should have further investigated Petre's wound in December. He stated that if Dr. Wix had initiated proper antibiotic treatment on December 6, Petre possibly would have had a better result. He found it "conceivable" that had the hospital or Hickory Cardiology Associates properly treated and

responded to the culture results received on December 5, 1996, Petre would not have lost his sternum. Dr. Fields also criticized Dr. Looyenga for not providing proper assessment, communication or direction to Petre. Had he been treated earlier, Petre would have had a better outcome and would have avoided the total removal of the sternum, but would have needed antibiotics and a surgical procedure.

Dr. Daniel Hirsch, an infectious disease consultant, testified for the defense that he diagnosed and treated Petre's sternal wound infection caused by MRSE in January, although this bacteria was present in the culture taken on December 2. He stated that vancomycin was an inferior antibiotic and not an effective prophylactic antibiotic to prevent against sternal wound infections. He testified that patients develop sternal wound infections regardless of antibiotic prophylaxis and the goal of treatment is merely to minimize risk, but that the risk cannot be completely eradicated. Dr. Hirsch also testified that Petre was predisposed to MRSE by the prolonged course of antibiotics that he received for pneumonia prior to his bypass surgery.

Dr. David Dreyfuss, a plastic and reconstructive surgeon, testified that he removed Petre's sternum and the dead and infected tissue due to the infection (a process called debridement) and performed reconstructive surgery on January 10, 1997.

Dr. Ronald Curran, a cardiothoracic surgeon, testified that with every bypass surgery, there is a 1% to 2% chance of a sternal wound infection. He opined that preoperative antibiotics do not always prevent infections in bypass patients. Dr. Curran stated that vancomycin was usually used when the patient was allergic to penicillin and was not a preferred antibiotic for bypass patients. He testified that the use of vancomycin preoperatively in this case would probably have decreased the chances of Petre developing a sternal wound infection, but could not have completely prevented the infection. He opined that Kucich's surgery and his treatment of Petre was within the standard of care and that the standard of care did not require that Petre receive vancomycin. He testified that Kucich did an excellent job of caring for Petre. Dr. Curran testified that the culture taken of Petre's wound on December 2 did not indicate the presence of a sternal wound infection. He stated that the standard of care did not require Dr. Kucich to continue to see Petre after his discharge from the hospital when Petre continued to see his cardiologist. He stated that the preoperative antibiotics Petre received did not predispose Petre to this infection. Even if the infection had been diagnosed earlier, Petre would have needed six weeks of antibiotic treatment and a surgical procedure.

During the jury instruction conference, plaintiff's counsel asked

the court to give the short form of IPI Civil (2000) No. 12.04. There were various arguments made by both plaintiff's counsel and defense counsel concerning whether to give IPI Civil (2000) No. 12.04 and, if so, whether the long or short form of the instruction was appropriate. The court ultimately decided not to give the instruction. The court ruled that the injury to Petre was the infection, not the resulting loss of his sternum, and that the only issue in this case was whether Dr. Kucich should have given vancomycin. The court reasoned that the evidence revealed that the only person able to make that decision was Dr. Kucich and the sole proximate cause of Petre's injury, the infection, was Kucich's conduct. Thus, the court reasoned, IPI Civil (2000) No. 12.04 was not necessary. Throughout this discussion, plaintiff repeatedly asked the court for the short form of IPI Civil (2000) No. 12.04 while defense counsel first asked for the long form of that instruction and then agreed with the court not to give the instruction at all. During this lengthy discussion, neither party informed the court of the appellate court's prior ruling in *Petre* that the jury should receive IPI Civil (2000) No. 12.04.

The jury found in favor of defendants and judgment was entered on the verdict on February 28, 2003. After plaintiff's posttrial motion for a judgment notwithstanding the verdict was denied on August 1, 2003, plaintiff filed this timely appeal.

While plaintiff raises several issues in this appeal, we need to address only one. We find that because the trial court refused to give IPI Civil (2000) No. 12.04 pursuant to this court's prior directive in *Petre*, this case must be reversed and remanded for a new trial.

The law of the case doctrine bars relitigation of an issue already decided in the same case. *People v. Tenner*, 206 Ill. 2d 381, 395, 794 N.E.2d 238, 247 (2002). Rulings on points of law made by a court of review are binding in that case upon remand to the trial court and on subsequent appeals to that same reviewing court unless a higher court has changed the law. *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 352 Ill. App. 3d 399, 417, 815 N.E.2d 924, 937 (2004). The purpose of the law of the case doctrine is to protect settled expectations of the parties, ensure uniformity of decisions, maintain consistency during the course of a single case, effectuate proper administration of justice, and bring litigation to an end. *Emerson Electric Co.*, 352 Ill. App. 3d at 417, 815 N.E.2d at 937. When an appellate court reverses and remands the cause with a specific mandate, the only proper issue on a second appeal is whether the trial court's order is in accord with the mandate. *Foster v. Kanuri*, 288 Ill. App. 3d 796, 799, 681 N.E.2d 111, 113-14 (1997).

■ First, plaintiff argues that the trial court erred in this second

trial by allowing defendants to assert the "empty chair" defense, *i.e.*, allowing them to admit evidence that subsequent treaters were negligent and the sole proximate cause of Petre's injuries. However, this issue has already been addressed and rejected by this court in *Petre*. As discussed above, the *Petre* court followed *Leonardi* and ruled that because Dr. Kucich and CMA each filed an answer denying that Petre's injury was the result of their conduct, both defendants should have been allowed to present evidence of the Hickory physicians' alleged postoperative negligence on the issue of proximate cause. *Petre*, 331 Ill. App. 3d at 943, 771 N.E.2d at 1091. While plaintiff disagrees with our decision in *Petre*, that decision remains good law and has not been overruled. See *Petre v. Kucich*, 201 Ill. 2d 613, 786 N.E.2d 199 (2002) (denying plaintiff's petition for leave to appeal).

Additionally, although an exception to the law of the case doctrine allows this court to depart from that doctrine if we find that our prior decision was palpably erroneous (*Foster*, 288 Ill. App. 3d at 799, 681 N.E.2d at 114), we find no need to apply this exception here. After reviewing the analysis and reasoning of the *Petre* court's decision, we agree with its holdings and find that they are not palpably erroneous. Accordingly, we see no reason to revisit the issue and hold that the law of the case doctrine bars relitgation of this issue. Thus, we reject plaintiff's argument and hold that the trial court correctly allowed defendants to assert this defense at trial and properly denied plaintiff's motions *in limine*.

■ Plaintiff next contends that the trial court improperly refused to instruct the jury on the issue of sole proximate cause with IPI Civil (2000) No. 12.04. Plaintiff argues that once the court allowed defendants to admit evidence of the dismissed defendants' negligence, plaintiff was entitled to a jury instruction to explain to the jury the impact of such evidence. We agree based on this court's previous decision in *Petre*.

IPI Civil (2000) No. 12.04 provides:

> "More than one person may be to blame for causing an injury. If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.
>
> [However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant.]" IPI Civil (2000) No. 12.04.

The Notes on Use section provides that this instruction should be used only where negligence of a person who is not a party to the suit

may have concurred or contributed to cause the occurrence. IPI Civil (2000) No. 12.04, Notes on Use. Additionally, the second paragraph should be used (in the long form of the instruction) only where there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of a third person. IPI Civil (2000) No. 12.04, Notes on Use.

Here, plaintiff argued, and the trial court held, that Petre's injury was the infection, not the resulting loss of his sternum and reconstructive surgery. Based on that holding and the fact that the evidence presented indicated that only Dr. Kucich had the responsibility to prescribe vancomycin, which would likely have prevented the infection, the trial court held that the evidence supported the proposition that Dr. Kucich's conduct was the sole proximate cause of Petre's injury, the infection, or that he was not liable. Thus, the court found that this sole proximate cause jury instruction was unnecessary. However, based on the holdings previously made by this court in *Petre*, the trial court erred in its analysis and ultimate decision not to give the instruction on sole proximate cause, IPI Civil (2000) No. 12.04.

In *Petre*, this court repeatedly held that because the defendants should have been allowed to assert the empty chair defense, the trial court abused its discretion in refusing to give IPI Civil (2000) No. 12.04. *Petre*, 331 Ill. App. 3d at 943, 771 N.E.2d at 1091. In so ruling, this court rejected exactly the same argument made by plaintiff and accepted by the trial court in the second trial, that Petre's injury was the infection. The *Petre* court stated:

> "Plaintiffs attempt to cloud the issue by arguing that Petre's 'injury' was not his sternal debridement and resulting reconstructive surgery but, rather, the infection itself. Plaintiffs reason that because the Hickory physicians had no part in failing to prescribe prophylactic vancomycin for Petre, they could not have been the sole proximate cause of Petre's infection; thus, the Hickory physicians could not be held liable for Petre's ultimate injuries (sternal debridement and reconstructive surgery) as a matter of law. We find this argument unpersuasive." *Petre*, 331 Ill. App. 3d at 943-44, 771 N.E.2d at 1091.

Thus, based on this court's ruling in *Petre*, the injury sustained by Petre was not merely his sternal wound infection, but the resulting debridement of dead tissue, loss of his sternum and reconstructive surgery. Accordingly, the law of the case doctrine again applies to bar relitigation of this issue and this holding was binding on the trial court. Because this issue had already been decided by this court, the trial court erred in deviating from our opinion in *Petre* and in finding as a matter of law that Petre's injury was the infection. The trial court

also erred in failing to give IPI Civil (2000) No. 12.04, when this court in *Petre* specifically held that such an instruction must be given following the admission of evidence concerning the negligence of the Hickory defendants. *Petre*, 331 Ill. App. 3d at 943, 771 N.E.2d at 1091. Under the law of the case doctrine, this holding of the *Petre* court was binding on the trial court.

Although the parties argued at the second trial whether the long or short form of IPI Civil (2000) No. 12.04 was appropriate in this case, neither side addresses this issue on appeal. While our decision in *Petre* did not specifically specify which form of the instruction should be given, we find that based on our analysis in that case, the long form of IPI Civil (2000) No. 12.04, including both paragraphs of the instruction, should be given on remand.

When holding that the trial court abused its discretion by not giving IPI Civil (2000) No. 12.04 and in rejecting plaintiff's argument that the injury was the infection, the *Petre* court reasoned:

"Contrary to plaintiffs' position, the admission of the contested evidence on remand will provide a sufficient basis from which a reasonable jury might conclude that: (1) Petre's postoperative infection occurred entirely in the absence of negligence; (2) Dr. Kucich did not violate the standard of care in failing to prescribe prophylactic vancomycin; (3) the Hickory physicians were in fact negligent in failing to detect Petre's infection in a timely manner; and (4) had the Hickory physicians timely diagnosed and treated Petre's infection, sternal debridement and reconstructive surgery would have been unnecessary. Whether a properly instructed jury will find Dr. Kucich liable for the full extent of Petre's injuries will ultimately be determined by that jury's verdict." *Petre*, 331 Ill. App. 3d at 944, 771 N.E.2d at 1091-92.

Based on this discussion, the *Petre* court found that with the admission of defendants' evidence of the subsequent treaters' negligence, there would be evidence tending to show that the sole proximate cause of Petre's injury, the sternal debridement and reconstructive surgery, could have been the conduct of a third person. Thus, the *Petre* court clearly intended that the long form of IPI Civil (2000) No. 12.04 be given.

In summary, we hold that based on our previous decision in *Petre*, which, under the law of the case doctrine, bars relitigation of all issues it decided and was binding on the trial court, this case must be reversed and remanded for a new trial. In the third trial, the trial court will be bound by the decisions of this court in *Petre* and in this case. The defendants will again be allowed to assert an empty chair defense and admit evidence of the Hickory physicians' alleged

postoperative negligence on the issue of proximate cause. Once this evidence is admitted, plaintiff will be entitled to receive the sole proximate cause jury instruction, IPI Civil (2000) No. 12.04, to instruct the jury on how to handle this additional evidence in determining Dr. Kucich's liability. Additionally, the injury suffered by Petre is not the infection, but is the sternal debridement, removal of his sternum and reconstructive surgery. Because evidence will be admitted to show that the dismissed Hickory defendants were negligent in failing to diagnose and promptly treat Petre's infection, there will be evidence tending to show that these dismissed defendants were the sole proximate cause of Petre's injury. Accordingly, the long form of IPI Civil (2000) No. 12.04 will be appropriate.

Based on our decision to reverse and remand this case for a new trial, we need not address the other issues raised by plaintiff in this appeal. For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this cause for a new trial consistent with this opinion and with our previous opinion in *Petre v. Kucich*, 331 Ill. App. 3d 935, 771 N.E.2d 1084 (2002).

Reversed; cause remanded for a new trial.

GREIMAN and QUINN, JJ., concur.