2022 IL App (1st) 210042-U

No. 1-21-0042

Second Division
May 3, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS4

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LESTER G. DETTERBECK III, WENDI GAWNE f/k/a Wendi Jensen, and BRUCE DETTERBECK, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 16 CH 02260 |
| JOHN DETTERBECK, BARBARA DETTERBECK, LESTER DETTERBECK ENTERPRISES, LTD., CARRIE TRUST GROUP PARTNERSHIP; LORRAINE TRUST GROUP PARTNERSHIP; ESTATE OF LESTER G. DETTERBECK, JR.; the LESTER G. DETTERBECK, JR. REVOCABLE TRUST DATED MAY 2, 2005; and LEAF, DAHL & COMPANY, LTD., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Caroline K. Moreland, Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The dismissal of counts IV through VI of plaintiffs' fourth amended complaint is affirmed to the extent the law of the case doctrine barred plaintiffs from relitigating causes of action based on the conduct of a former trustee but reversed to the extent such causes of action are based on the conduct of the successor co-trustees.

¶ 2  This case returns to us following our remand to the circuit court in *Detterbeck v. Detterbeck*, 2019 IL App (1st) 181113-U (*Detterbeck I*). Relevant to this appeal, we held in *Detterbeck I* that the circuit court properly dismissed portions of the plaintiffs', Lester G. Detterbeck III (Lester III), Wendi Gawne, and Bruce Detterbeck, fourth amended complaint where (1) plaintiffs were reasonably apprised of harms stemming from alleged breaches of fiduciary duty in 1986 and (2) there was no tolling of the statute of limitations. With respect to claims against the former trustee, Lester Detterbeck, Jr. (Lester Jr.), we held that *laches* also barred plaintiffs' claims due to the death of key witnesses. Claims against the successor co-trustees, John and Barbara Detterbeck based on accountability for the actions of Lester Jr., were also properly dismissed.

¶ 3  However, we held that the circuit court improperly dismissed certain other causes of action against the successor co-trustees that accrued within five years of the filing of the complaint. We further held that the circuit court improperly dismissed causes of action relating to professional negligence against the family's accountant, Leaf, Dahl & Company (Leaf). Accordingly, we restored those causes of action and remanded to the circuit court for further proceedings.

¶ 4  On remand, the circuit court granted defendants' motion to dismiss counts IV through VI of the fourth amended complaint pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2020)). On appeal, plaintiffs argue that the dismissal was improper as it was inconsistent with this court's decision in *Detterbeck I* and violated the

mandate rule and law of the case doctrine. For the following reasons, we affirm in part and reverse in part.

¶ 5                                    I. BACKGROUND

¶ 6                                  A. Initial Litigation

¶ 7     The factual background of this case is detailed in *Detterbeck I. Detterbeck*, 2019 IL App (1st) 181113-U. We summarize it again here to provide context for our current discussion.

¶ 8                                    1. The Trusts

¶ 9     In 1973, plaintiffs, their youngest brother John Detterbeck, and their sister Cheryl Martin[1] were named as the primary beneficiaries of the Carrie Cederna Trusts 1, 2, 3, 4, and 5 (Carrie Trusts). Carrie Cederna, the beneficiaries' maternal grandmother, named the beneficiaries' father, Lester Jr., as the trustee. In 1978, Lester Detterbeck, Sr., executed a nearly identical trust agreement on behalf of plaintiffs, as well as John, and Cheryl under the Lorraine Trusts 1, 2, 3, 4, and 5 (Lorraine Trusts). Lester Jr. was also named trustee of the Lorraine Trusts. The agreements differed only in the names of the grantors, the date and place of execution, and the named trustee who would act if no other trustee was qualified to act.

¶ 10     Lester Jr. managed the trusts from their creation up to his death. In 2008, he appointed his son John and John's wife Barbara as successor co-trustees for both sets of trusts. On August 24, 2015, Lester Jr. passed away. Shortly thereafter, John and Barbara accepted their appointments as co-trustees, retroactive to the date of Lester Jr.'s death.

---

[1] According to the fourth amended complaint, Martin passed away and her beneficiary shares were distributed evenly among her four siblings in accordance with the terms of the trust agreements. The complaint does not appear to identify the date of her death.

¶ 11    During his time as trustee, Lester Jr. was also the owner of Lester Detterbeck Enterprises (LDE),[2] a family-run company located in Iron River, Michigan, which manufactures cutting tools, cams, tool holders, and replacement parts for the precision machine products industry. Plaintiffs all worked at LDE at some point in time, in various capacities, and for varying durations. After Lester Jr.'s death, John, who was named president of LDE in 1999, received 100% ownership of the company.

¶ 12    In the months following Lester Jr.'s death, John asserted that he reviewed all available records to facilitate the transition of the company and trusts. During his review of the relevant documents, John found that each of the separate trusts did not have individual bank accounts. Instead, there was one bank account for the "Lorraine Trust Group" and another for the "Carrie Trust Group." On the advice of legal counsel, John and Barbara executed an "Amended and Restated Partnership Agreement" for the Carrie Trusts and the Lorraine Trusts. The agreements were signed on December 12, 2015, and purported to be continuations of the original partnership agreements, which could not be located. The partnership agreements joined the Carrie Trusts into the Carrie Trust Group and the Lorraine Trusts into the Lorraine Trust Group.

¶ 13    After their father's memorial, John received emails from Lester III regarding the trusts. One of the e-mails requested copies of the original trust documents, in addition to recent accompanying tax returns and financial statements. After receiving some documents from John, Lester III sent another e-mail, asking to "work together" on the trusts. Lester III's second e-mail referenced two letters he sent to Lester Jr. in 1985 and 1986.

---

[2] LDE was formerly known as Form-Rite Tools, Inc. until the later 1980s.

¶ 14 The 1985 letter was written following a judge's ruling that the Carrie and Lorraine Trust Groups were marital property for purposes of Lester Jr.'s divorce from plaintiffs' mother. Lester III stated that he had "no problem" with the judge's ruling so long as his father began to operate and handle the trusts "in a fiduciary manner for the benefit of the beneficiaries." The letter continued, "[i]f on the other hand, the trusts will be operated as they have in the past or if they are system[ati]cally dissolved back into Form-Rite or some other entity of yours, I think that mother and all of your children have 'been screwed.' " Lester III then demanded that their father share information with all of the beneficiaries regarding the content of the trusts, the present investments, the rights and responsibilities of the trustee and beneficiaries, contemplated distributions, and provisions regarding securing loans from the trusts.

¶ 15 The 1986 letter acknowledged that no response to the first letter had been received for over a year. Lester III accused his father of continuing to use the trust funds for his own personal benefit, despite the divorce decree declaring the funds as property of the beneficiaries instead of the parents. The letter asserted that the beneficiaries were entitled to "regular reporting, full disclosure, and objective and fiduciary handling of the trust funds" and that there was the possibility of suing to remove his father as trustee if he did not provide the same. Lester III then requested that his father set in motion a plan to close the trusts and distribute the funds.

¶ 16                                    2. Procedural History

¶ 17 On December 9, 2015, plaintiffs each invoked the terms of the trust agreement allowing them to request the distribution of their respective trusts. Later, plaintiffs also issued a demand for a complete accounting of the trusts. Lester III stated that he was only able to review the 2012, 2013, and 2014 trust tax records because he had not been given a full accounting by the successor

co-trustees. Despite his limited review, Lester III was concerned about the status of the trusts, and as a result, plaintiffs filed their initial complaint on February 17, 2016.

¶ 18                                    a. Fourth Amended Complaint

¶ 19    The complaint was amended four times to re-plead counts that were dismissed, add additional defendants and claims, and address other issues that arose during the proceedings. Also, defendants John and Barbara filed a counterclaim for a declaratory judgment regarding the sale of equipment held by the trust partnerships. This counterclaim was later resolved via agreed order after depositions were taken.

¶ 20    On September 28, 2017, plaintiffs filed their fourth amended complaint, which alleged, *inter alia*, that the trusts and their assets were wrongfully utilized and manipulated to fund LDE without adequate compensation and to the detriment of the trusts and the beneficiaries. The complaint consisted of eight counts, alleging breaches of fiduciary duty, civil conspiracy, aiding and abetting, unjust enrichment, and professional negligence. We now set forth the contents of each count to the extent necessary for the resolution of this appeal.

¶ 21    Count I alleged breach of fiduciary duty against Lester Jr.'s estate and trust. Specifically, plaintiffs complained that Lester Jr. had (1) arranged unreasonable oral leases of equipment owned by the trusts, through the partnerships, to LDE at below-market rates; (2) generated unnecessary loans between the trusts and LDE at lopsided interest rates favoring LDE; (3) removed and converted trust assets for personal use; and (4) failed to provide proper accounting or keep standard books and records.

¶ 22    Count II alleged breach of fiduciary duty against John and Barbara. Specifically, John and Barbara were accused of wrongfully abandoning trust assets, allowing LDE to convert such assets, and manipulating the books and records to provide inappropriate leases to LDE. Plaintiffs further

alleged that John and Barbara failed to rectify the misdeeds perpetrated by Lester Jr., choosing instead to perpetuate the pattern of self-dealing and lack of communication and transparency. John was also accused of removing assets from the trusts for personal use, and both co-trustees were alleged to have negotiated in bad faith regarding the liquidation of trust assets and the winding down of the trusts.

¶ 23    Count III alleged that Lester Jr., his Estate, John, and Barbara failed to provide an accounting to the other beneficiaries.

¶ 24    Because Counts IV, V and VI form the basis of this appeal, we set forth the allegations in those counts in detail. Count IV alleged that Lester Jr., his Estate, John, Barbara, LDE, and the Carrie Trust and Lorraine Trust Groups had engaged in a civil conspiracy. Specifically, count IV alleged that "[p]rior to 2015, [Lester Jr.], John, Barbara, LDE, and [the Trust Groups] had an agreement to structure lease rates and otherwise administer the Trusts and Partnerships in a manner that would divert assets from the Trusts to LDE, [Lester Jr.], John, and Barbara, to the detriment of the [p]laintiffs' beneficial interests in the Trusts." Count IV further alleged that "[i]n furtherance of this scheme, [Lester Jr.], John[,] and Barbara, as [s]uccessor [c]o-trustees, committed actions, as alleged in [c]ounts I and II, that breached their fiduciary duties in the administration of the [t]rusts in order to benefit themselves and LDE, to the detriment of [p]laintiffs' beneficial interests in the [t]rusts."

¶ 25    Count V alleged aiding and abetting of a breach of fiduciary duty against LDE, Carrie Trust Group, and Lorraine Trust Group. Specifically, Count V alleged that

    "[Lester Jr.], John, and Barbara utilized their capacities as manager of the

    Partnerships and LDE to collaborate with and use their capacities as [t]rustee and

    [s]uccessor [c]o-[t]rustees to: (a) transfer partnership assets to LDE for which the

Partnerships did not receive any or adequate consideration; (b) [m]anipulate the process of purchasing new equipment and trading in used equipment in order to facilitate LDE making artificially and improperly reduced lease payments; (c) facilitate [Lester Jr. to lend] personal funds to the Partnerships at above-market interest rates while simultaneously causing the Partnerships to lend funds to LDE at below-market interest rates; [and] (d) facilitate the conversion of the Partnerships' assets by [Lester Jr.], John, and Barbara ***."

Count V further alleged that LDE "selected and issued purchase orders for the acquisition of new equipment under its name[,] even though the invoices were being paid by the Partnerships[,]" resulting in artificially and improperly reduced lease payment amounts.

¶ 26    Count VI alleged, in the alternative, unjust enrichment, against John, Barbara, LDE, and Lester Jr.'s Estate and Trust. Specifically, count VI alleged that Lester Jr., Barbara, and LDE "unlawfully retained the benefit of utilizing the Trust Estates, including but not limited to using, converting, and receiving Trust assets for which Trusts did not receive any or adequate consideration." Count VI also alleged that "[Lester Jr.], John, Barbara, and LDE never had purchase, transfer, or gifting contracts for any of the assets that [they themselves] and entities received from the Partnerships." Count VI further stated that as of December 31, 2015, Lester Jr., John, and Barbara had "transferred various pieces of the Partnerships' equipment to LDE for no consideration." Count VI also alleged that John and Barbara "caused the sale of Partnership equipment to LDE at fire-sale prices," and included a specific example of a sale in 2016. Specifically, as to John, count VI alleged that he had "received a substantial amount of money from the Partnerships and paid no interest" for the period of time that he held the funds, specifically

pointing to a January 6, 2016 date. Last, specifically as to Lester Jr., count VI alleged that he had "purchased a golf cart in 2006 for approximately $7,577.44 with Carrie Trust Group funds."

¶ 27    Finally, counts VII and VIII alleged that Leaf had committed professional negligence by aiding and abetting the co-trustees' misconduct.

¶ 28                                b. Original Motion to Dismiss

¶ 29    John, Barbara, and LDE filed a section 2-619.1 motion to dismiss pursuant to the Code of Civil Procedure (735 ILCS 5/2-619.1) (West 2016) (LDE motion). As to the Section 2-619 portion of the combined motion (735 ILCS 5/2-619) (West 2016), the LDE motion argued, *inter alia*, that plaintiffs' claims were barred by the statute of limitations, *laches*, collateral estoppel, and *res judicata*.[3] The motion asserted that plaintiffs delayed bringing their claims until their father's passing, even though they benefitted under the trust agreements and partnerships for more than 30 years and were aware of their ability to bring a suit against Lester Jr. during that time period. According to defendants, this delay caused the exact prejudice to John and Barbara that the rule of *laches* aimed to prevent because Lester Jr. was no longer alive to defend his actions and such burden now fell on the successor co-trustees. The motion further asserted that claims on the propriety of transactions between the trusts and LDE were previously ruled on by another judge in the divorce proceedings between Lester Jr. and his former spouse, and thus were barred by collateral estoppel and *res judicata*.  Last, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615) (West 2016), the motion argued that, among other things, plaintiffs had failed to state a claim for civil conspiracy and unjust enrichment.

---

[3] Leaf also filed a motion to dismiss. In *Detterbeck I*, counts VII and VIII against the company were restored. Leaf is not participating in the instant appeal.

¶ 30    In response, plaintiffs argued that their complaint was timely filed and not barred by the statute of limitations, waiver, estoppel, or *laches* because their claims accrued only when they knew or reasonably should have known of such injuries and that their injuries were wrongfully caused. Plaintiffs contended that they did not have actual knowledge of the misdeeds until plaintiffs were allowed to review trust-related documents in 2016, well within the statute of limitations. Plaintiffs further contended that collateral estoppel and *res judicata* did not apply because their current claims could not have been raised in the divorce proceedings between Lester Jr. and his former spouse.

¶ 31    On April 30, 2018, the circuit court dismissed all counts with prejudice. The circuit court found that the 1985 and 1986 letters, written by Lester III to Lester Jr., contradicted plaintiffs' assertion that they did not discover issues with the trusts until after Lester Jr.'s death. Thus, the circuit court determined that the discovery rule did not apply and the allegations against the trustees were barred under the statute of limitations. The circuit court also found that without the foundational tort or cause of action, the civil conspiracy and aiding and abetting charges must also be dismissed.

¶ 32                                    c. *Detterbeck I*

¶ 33    In *Detterbeck I*, 2019 IL App (1st) 181113-U, we affirmed the dismissal of several counts, but reversed and remanded in part as to other counts.

¶ 34    In particular, we found that claims against Lester Jr. and his estate were barred under the statute of limitations and *laches*. We noted that the statute of limitations period for a breach of fiduciary duty claim is five years and plaintiffs had initiated suit on February 17, 2016, more than five years after Lester Jr.'s alleged wrongful conduct. See *Id.* ¶ 32. As such, we held that the claims raised in the complaint "should then be focused on causes of action accruing on or after February

17, 2011." *Id.* ¶ 33. We rejected plaintiffs' argument that they first realized their injuries caused by Lester Jr.'s administration of the trusts in 2015. *Id.* Although we recognized that many of the allegations of wrongdoing occurred after the 1985 and 1986 letters, we found that plaintiffs could not "benefit from their willful ignorance of their father's loose practices in regard to the trusts' administration[,]" of which they were aware as early as the 1980s. *Id.* We reasoned that the letters themselves levied "accusation[s] of self-dealing, manipulation involving [LDE's] *** failure to provide an accounting, and misuse of the trust assets for personal gain" and therefore, plaintiffs were sufficiently aware of their injury and could not "seek refuge in the doctrine of the discovery rule to justify the delay in filing their complaint." *Id.* ¶ 40. Additionally, we found that *laches* applied to the remainder of the claims against Lester Jr., specifically claims arising from 2011 until his death in 2015. *Id.* ¶ 54. We reasoned plaintiffs' inaction for 40 years constituted unreasonable delay and the deaths of two key witnesses prejudiced defendants. *Id.* ¶ 52.

¶ 35    With respect to claims against John and Barbara, we noted that while they could not be held liable for Lester Jr.'s actions, they could be held liable for their own actions as co-trustees. *Id.* ¶ 57. Notably, we did not specifically address any allegations against the Carrie Group and Lorraine Group Trusts, but we did find that any action taken by John and Barbara as successor co-trustees was within the statute of limitations period because they "accepted their appointment as successor trustees in November 2015, with retroactive effect to the day after Lester Jr.'s death on August 24, 2015." *Id.* ¶ 58. We also found that there was no unreasonable delay between the amended complaint and when John and Barbara's actions allegedly occurred and therefore, *laches* did not apply. *Id.*

¶ 36    We further observed that the specific allegations against John and Barbara appeared to focus primarily on three acts: (1) John's removal of $278,000 from the partnerships' brokerage

accounts, (2) John and Barbara's filing of a counterclaim in this litigation to force the sale of the remaining equipment at lower prices to the benefit of LDE and the detriment of the trust beneficiaries, and (3) John and Barbara's "writing-off" of the trusts' assets as abandoned, thereby giving the equipment to LDE for no consideration. *Id.* We found the first allegation was without merit because the $278,000 was returned two months later and the terms of the trust agreement authorized such lending without interest. *Id.* ¶ 59.

¶ 37    Next, we found that plaintiffs' claim challenging the sale of the remaining assets was neither time-barred by the statute of limitations nor precluded by *res judicata*. *Id.* ¶ 60. Specifically, we examined whether John and Barbara's counterclaim, allegedly pursued in bad faith, had a *res judicata* effect on the allegations within the fourth amended complaint. *Id.* While John and Barbara had argued that the counterclaim was settled by agreed order and thus had a preclusive effect for the remainder of the litigation, we determined that an agreed order was not a judicial determination of the parties' rights so as to have a preclusive effect on plaintiffs' claims. *Id.* Further, given that the sale of remaining assets had occurred after John and Barbara had assumed their roles as co-trustees, we found that the statute of limitations also did not preclude the claim from moving forward. *Id.*

¶ 38    Finally, we found that claims of improper abandonment of the trusts' assets were raised without delay and within the statute of limitations. *Id.* ¶ 61. Therefore, nothing precluded this cause of action from proceeding. *Id.* We stated, "[h]owever, the amended complaint still contains other allegations that are not specific as to when they occurred, and appear intertwined with the allegations against Lester Jr." *Id.* We reiterated that "John and Barbara may only be held liable for any actions they took after accepting their appointment as co-trustees" and "that claims against Lester Jr. through his estate were properly dismissed." *Id.*

¶ 39    On February 4, 2020, this court issued a mandate in accordance with *Detterbeck I*. The mandate did not contain any instructions but stated that the circuit court's decision was "[a]ffirmed in part and reversed in part."

¶ 40                                    B. Litigation on Remand

¶ 41    Following this court's remand, plaintiffs filed a motion to reinstate the case and for a case management conference in the circuit court. John, Barbara, and LDE filed a response (the response), agreeing that the case should be reinstated but asserted that the fourth amended complaint must be amended to conform with our decision in *Detterbeck I*. The response reasoned that the fourth amended complaint continued to "rely on allegations and factual predicates that [this Court] held inactionable[.]" The response pointed the circuit court to this court's finding that "John and Barbara could not be held liable for [Lester Jr.'s] actions as successor trustees," but further argued that this court had "identified only three [specific actions] as pleaded in the [f]ourth [a]mended [c]complaint." The response also emphasized our finding that the fourth amended complaint still contained allegations that were unspecific as to the time which they occurred, as well as allegations that may be intertwined with the allegations against Lester Jr. Last, the response concluded that because amendments to a complaint were not proscribed by a reviewing court's decision, the circuit court was within its discretion to allow a party to amend its pleadings.

¶ 42    Plaintiffs filed a reply, arguing that it was not required to file a new complaint. Plaintiffs noted that this court had not ordered an amendment to the fourth amended complaint in *Detterbeck I*. Plaintiffs stated that this court had restored, "in full without limitation and in its entirety the claims against the [s]uccessor [t]rustees for their breaches of fiduciary duty." Plaintiffs also acknowledged that *Detterbeck I* did not expressly address claims against LDE or the partnerships, or the unjust enrichment claim against John or Barbara. Plaintiffs reasoned, however, that every

defendant should be compelled to answer the remaining claims and move forward with the litigation.

¶ 43    On July 8, 2020, the circuit court entered an order to reinstate the case.  The court did not address the parties' arguments regarding amending the complaint, but ordered that defendants answer "the remaining counts of the fourth amended complaint."

¶ 44    On August 5, 2020, John, Barbara, and LDE filed a joint section 2-619.1 motion to dismiss counts IV, V, and VI of plaintiffs' fourth amended complaint (the motion), which they asserted had been ''expressly dismissed" by this court in *Detterbeck I*. First, pursuant to section 2-619 of the Code of Civil Procedure, the motion argued that all claims related to Lester Jr.'s conduct were barred by the statute of limitations or laches. Further, the motion argued that this court's dismissal of claims against Lester Jr. (Counts I and III) as time barred, affirmed the circuit court's previous dismissal of the "related causes of action," which the motion identified as counts IV through VI. Thus, the motion reasoned that, as a matter of law, the circuit court was required to dismiss those counts with prejudice under the law of the case doctrine and *laches*.

¶ 45    With respect to section 2-615 of the Code of Civil Procedure, the motion repeated the original arguments raised by the same defendants in *Detterbeck I*, namely that counts IV through VI should be dismissed with prejudice for failure to state a claim for civil conspiracy, aiding and abetting, and unjust enrichment. John, Barbara, and LDE also filed a verified answer and seven affirmative defenses, some of which realleged that all claims related to Lester Jr.'s conduct were barred by the statute of limitations, *laches*, and failure to state a claim.[4]

---

[4]Leaf also filed a motion to dismiss counts VII and VIII for similar reasons, asserting additionally that the law of the case doctrine controlled the remaining allegations in the fourth amended complaint.

¶ 46 Plaintiffs responded to the motion, arguing that it should be denied. As to counts IV through VI, plaintiffs criticized the defendants' "cynical misreading of [*Detterbeck I*]" and pointed out that all counts contained allegations specifically against John and Barbara, who, according to plaintiffs, this court had "unambiguously held *** could be liable for their own conduct." Plaintiffs also filed a section 2-615 Motion to Strike John, Barbara and LDE's affirmative defenses, arguing that three of the affirmative defenses were improper, while the remaining defenses of statute of limitations, *laches*, and failure to state a claim were barred by the law of the case doctrine set forth in *Detterbeck I.*

¶ 47 On November 10, 2020, the circuit court entered a written order addressing the pending motions to dismiss and strike. As to the plaintiffs' motion to strike, the circuit court dismissed with prejudice defendants' fourth and seventh affirmative defense, namely failure to state a claim and reservation of rights, as improper. The circuit court also dismissed with prejudice defendants' fifth and sixth affirmative defenses, namely statute of limitations and *laches*, based on our holding in *Detterbeck I.*

¶ 48 Next, as to John, Barbara, and LDE's section 2-619.1 motion to dismiss, the circuit court also dismissed counts IV through VI with prejudice. Although the motion failed to assert under which subsection of section 2-619 for which it sought relief, the circuit court assessed the motion pursuant to section 2-619(a)(9). The circuit court's order to this section of the motion stated, in full:

"Defendants argue that the appellate court's decision implicitly precluded the claims brought in [c]ounts IV through VI. The appellate court applied the doctrine of laches to deny the remainder of the claims alleging breaches of fiduciary duty by Lester Jr. and the 'related cause of action. [(Internal quotations omitted)].

- 15 -

Count IV alleges a breach of fiduciary duty between the estate of the father, John, Barbara, LDE, and several other entities. Count V alleges that John, Barbara, and LDE aided the [f]ather in breaching its fiduciary duty. Count VI alleges unjust enrichment by the [f]ather, John, Barbara, and LDE. This [c]ourt believes the words 'and related causes of action' as utilized by the appellate court preclude all claims relating to the [f]ather's conduct.

The appellate court noted that[] [t]he specific allegations against john and Barbara are primarily focused on three acts, (1) John removed $278,000 from the partnerships' brokerage accounts, (2) John and Barbara pursued a counterclaim in bad faith to force the sale of the remaining equipment at lower prices to the benefit of LDE and the detriment of the trusts' beneficiaries, and (3) John and Barbara wrote-off trusts' assets as abandoned giving the equipment to LDE for no consideration in December 2015. [*Detterbeck I*], 2019 IL App (1st) 181113-U.

The only count in the fourth amended complaint dealing with these three specific allegations is Count II. Therefore, the Court will grant defendants' motion to dismiss Counts IV-VI. [(Internal quotations omitted)]."

¶ 49 On November 12, 2020, plaintiffs moved for reconsideration or, alternatively, a request for Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) language to pursue an interlocutory appeal. Of relevance here, plaintiffs contended that the circuit court's dismissal of counts IV through VI was improper as each of those counts included allegations against John, Barbara, and LDE with respect to their actions following their father's death.

¶ 50    In response, defendants contended that any such allegations related to John and Barbara's actions prior to the death of their father had been eliminated by *Detterbeck I,* and that plaintiffs had ample opportunity to amend their complaint to conform to this court's holding.

¶ 51    In reply, plaintiffs admitted that the allegations contained within counts IV through VI contained allegations against Lester Jr. as well as John and Barbara, which had "understandably *** created confusion."

¶ 52    On January 4, 2021, the circuit court denied the request for reconsideration but granted plaintiff's request for Rule 304(a) language. This interlocutory appeal followed.

¶ 53                                    II. ANALYSIS

¶ 54    On appeal, plaintiffs argue that the circuit court erred in dismissing their claims for civil conspiracy, aiding and abetting a breach of fiduciary duty, and unjust enrichment against the partnerships and LDE with prejudice. They assert that these claims are based on the conduct of the successor co-trustees rather than Lester Jr., and therefore, are not precluded by *Detterbeck I.* Plaintiffs contend that the circuit court misread this court's order and therefore, its decision to dismiss counts IV through VI violates the law of the case doctrine. Defendants argue in response that, based on the law of the case, the circuit court properly dismissed counts IV, V and VI. They contend that in affirming dismissal of the claims against Lester, Jr., this court dismissed "all related claims" which they interpret to include all claims alleged in those three counts.

¶ 55    The narrow issue before us is whether the circuit court's dismissal of counts IV, V, and VI of the fourth amended complaint was consistent with the *Detterbeck I,* that is, with the law of the case doctrine. Accordingly, we set forth the defining principles of the doctrine, as well as the standard of our review. The law of the case doctrine bars relitigating an issue previously decided in the same case. *Long v. Elborno*, 397 Ill. App. 3d 982, 989 (2010). Simply put, "when a court

- 17 -

decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Application of the doctrine is not limited to the court's explicit decisions but applies equally to those issues decided by necessary implication. *CE Design Ltd. v. C & T Pizza, Inc.*, 2020 IL App (1st) 181795, ¶ 32. The doctrine protects the parties' settled expectations, ensures uniformity of decisions, maintains consistency during the course of a single case, effectuates proper administration of justice, and brings litigation to an end. *Petre v. Kucich*, 356 Ill. App. 3d 57, 63 (2005). Issues previously decided include issues of both law and fact. *Alwin v. Village of Wheeling*, 371 Ill. App. 3d 898, 910 (2007). "Questions of law that are decided on a previous appeal are binding on the trial court on remand as well as on the appellate court in subsequent appeals." *Long*, 397 Ill. App. 3d at 989. Even so, the doctrine is not a limit on the power of the court. *Lurie v. Wolin*, 2017 IL App (1st) 161571, ¶ 30 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). "[A] court may depart from the law of the case to correct clerical mistakes, to clarify its opinion or mandate, to remedy fraud on the court or other misconduct, to avoid divergent results in cases pending simultaneously, or to minister to other similar aberrations." *Id.* (quoting *Laffey v. Northwest Airlines, Inc.*, 642 F.2d 578, 585-86 (D.C. Cir. 1980)). Because application of the law of the case doctrine is a question of law, our standard of review is *de novo*. *In re Christopher K.,* 217 Ill. 2d 348, 363-64 (2005).

¶ 56    Prior to addressing the merits, we first consider the circuit court's jurisdiction upon the remand in *Detterbeck I.* A reviewing court's mandate vests the trial court with jurisdiction only to take action that complies with the mandate. *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 28. A trial court may not exceed the scope of the mandate and must obey precise and unambiguous directions on remand. *Id.* The propriety of the trial court's action on remand is to be determined from the appellate court's mandate, as opposed to the appellate court's opinion. *Id.* However,

where specific directions are not given within the mandate, the trial court should examine the opinion and determine what proceedings would be consistent with the opinion. *Id.* " '[A]ny other order issued by the trial court is outside the scope of its authority and void for a lack of jurisdiction.' " *Id.* (quoting *People ex rel. Bernardi v. City of Highland Park*, 225 Ill. App. 3d 477, 481 (1992)).

¶ 57    Our mandate following our order in *Detterbeck I* contained no specific instructions. As such, we must revisit the substance of the order, which we have set forth in detail above, to determine the propriety of the trial court's action on remand.

¶ 58                      A. Dismissal of Counts IV, V and VI with Prejudice

¶ 59    As previously noted, plaintiffs did not seek to amend their complaint on remand and thus the same allegations that were before us in *Detterbeck I* are before us in this appeal. The parties concede, and the circuit court's order is consistent, that those counts in the fourth amended complaint that allege claims against Lester Jr. were properly dismissed with prejudice on remand as law of the case. In its dismissal order, the circuit court noted that in *Detterbeck I*, we "had applied the doctrine of *laches* to deny the remainder of the claims alleging breaches of fiduciary duty by Lester Jr. and the related causes of action." The circuit court stated that the phrase "related causes of action" as utilized by this court "preclude[d] all claims relating to the Father's conduct." The circuit court then proceeded to quote our discussion of the sufficiency of the remaining claims against John and Barbara, specifically as to the three main categories of allegations against them, and ultimately held that "[t]he only count in the complaint dealing with these three specific allegations is [c]ount II."

¶ 60    The circuit court properly applied our holding in *Detterbeck I* to dismiss any allegations remaining against Lester Jr. Further, the circuit court correctly construed "related causes of action" to refer to claims against Lester, Jr. However, the circuit court, in focusing on the three main

categories of allegations against John and Barbara, apparently overlooked that *Detterbeck I* also restored causes of actions against, among others, John, Barbara, and LDE by distinguishing those allegations from those directed against Lester Jr. The circuit court's dismissal with prejudice assumed that there were "no set of facts [that could be] proven that would support the plaintiff's cause of action." *Nosbaum v. Martini*, 312 Ill. App. 3d 108, 113 (1st Dist. 2000). However, we determined in *Detterbeck I* that were certain allegations contained within counts IV, V and VI that could support the plaintiff's causes of action, once the plaintiffs addressed the issues related to the complaint's unclear timelines and comingled allegations. By dismissing the entirety of counts IV through VI with prejudice, the circuit court disregarded the law of the case set forth in *Detterbeck I*, where we held that although causes of action against Lester Jr. were no longer viable, the plaintiffs' cause of action against John, Barbara, and LDE, when separate and discernible from that of their father, could move forward.

¶ 61 If a pleading is insufficient in substance or form, the court may order a fuller more particular statement. See 735 ILCS 5/2-612 (West 2020). That said, clearly it was not the circuit court's job to parse out the details of the complaint to conform to our holding in *Detterbeck I*. Indeed, plaintiffs could have avoided this appeal simply by amending their complaint to rectify the deficiencies identified in *Detterbeck I*. Even so, full dismissal of counts IV through VI, which would result in the dismissal of some claims we found actionable in *Detterbeck I*, would fail to protect the parties' settled expectations based on *Detterbeck I* and the proper administration of justice. See *Petre*, 356 Ill. App. 3d at 63. Further, affirming the circuit court's order in its entirety would run afoul of the well-established principle that questions of law decided on a previous appeal are also binding not just on the trial court, but also on the appellate court in subsequent appeals. See *Long*, 397 Ill. App. 3d at 989. Thus, we conclude that the circuit court's dismissal of counts

IV, V and VI of the fourth amended complaint was in violation of the law of the case and therefore we affirm in part and reverse in part the circuit court's dismissal order.

¶ 62    Before concluding, we pause to address plaintiffs' argument in this appeal that the allegations or counts are specific because they incorporated by reference the facts outlined earlier in the complaint. We previously held, regarding this same complaint, that the allegations, as drafted, did not set forth with specificity the timeframe for when the misconduct occurred and appeared to be premised on Lester Jr.'s conduct. Although we did not explicitly order plaintiffs to amend their complaint, we specifically noted areas in which the complaint was deficient.

¶ 63    The Illinois Code of Civil Procedure mandates that "[a]ll pleadings shall contain a plain and concise statement of the pleader's cause of action" and that "[e]ach separate cause of action upon which a separate recovery might be had shall be stated in a separate count *** to be divided into paragraphs [with] each paragraph containing, as nearly as may be, a separate allegation." See 735 ILCS 5/2-603(a), (b) (West 2020).  "Concise and clear pleadings are vital to the administration of justice" and "[n]o party should be called upon to answer or defend the redundant, jumbled[,] and cryptic pleadings filed by plaintiff's counsel." *Id.* Further, "no court should be forced to expend so much time and energy attempting to decipher them." *Id.* "[A] complaint may be dismissed if it is drafted in such a manner as to render any attempt to answer futile." *Rubino v. Circuit City Stores, Inc.*, 324 Ill. App. 3d 931, 938 (2001).

¶ 64    Admittedly, plaintiffs' fourth amended complaint is not indecipherable. Neither is it so clearly nor concisely drafted so as to comport with the rules governing pleadings. Plaintiffs' complaint levies 201 allegations against multiple defendants, some of whom have been dismissed, others who have not, all tied within the same counts and allegations. Although plaintiffs are correct in that we did not issue a mandate to specifically amend their complaint, clearly in *Detterbeck I*

plaintiffs were put on notice that the complaint was in need of cleanup. Moreover, as noted by the defendants both in filings in the circuit court and on appeal before this court, plaintiffs were urged to amend the complaint to conform to our holding in *Detterbeck I.* Thus, although no specific instructions to amend were included in this court's mandate back to the circuit court, given the number of parties, coupled with the complexity of the allegations, it would seem to us that amendment of the complaint to conform to the holdings in *Detterbeck I* would not only have been compliant with the rules of civil practice, but also prudent.

¶ 65    In sum, we affirm in part and reverse in part the circuit court's order. To the extent that allegations contained within counts IV through VI of the fourth amended complaint reference any actions taken by Lester Jr. prior to his death in 2015, the circuit court's order is affirmed, and those counts are dismissed with prejudice pursuant to the law of the case doctrine. However, to the extent that such counts allege any actions taken by John and Barbara, as successor co-trustees and in control of LDE and the various partnerships following August 24, 2015, the circuit court's order is reversed, and those allegations are restored. Lest there be any confusion on remand, plaintiffs are directed to amend their complaint to conform to *Detterbeck I* and now also to this holding. We reiterate our observation in *Detterbeck I* that counts IV through VI comingle allegations between Lester Jr. and John, Barbara, and LDE, and must be amended to prevent further delay, confusion, and waste of court resources.

¶ 66                            B. The Parties' Section 2-615 Arguments

¶ 67    On a final note, the circuit court dismissed counts IV, V and VI of plaintiff's fourth amended complaint pursuant to section 2-619 of the Code and made no ruling on defendant's combined section 2-615 motion. The defendants now ask, in the event dismissal pursuant to section 2-619 is not affirmed, that we consider affirmance of the court's dismissal pursuant to section 2-

615. Specifically, defendants seek dismissal of counts IV (civil conspiracy), V (aiding and abetting civil conspiracy), and VI (unjust enrichment) for failure to state a claim. We decline defendants' entreaty and leave this matter in the same procedural posture as we left it on our initial remand.

¶ 68                                      III. CONCLUSION

¶ 69    For the reasons stated, we affirm in part and reverse in part.

¶ 70    Affirmed in part and reversed in part, with directions.