2022 IL App (1st) 220162-U

No. 1-22-0162

Second Division
December 20, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS4

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LESTER G. DETTERBECK, III, individually and as beneficiary of the Trust Agreement Establishing Carrie Cederna Trusts – 1, 2, 3, 4, and 5 dated December 6, 1973, and the Trust Agreement Establishing Lorraine Trusts – 1, 2, 3, 4, and 5, dated January 10, 1978; WENDI GAWNE f/k/a WENDI JENSEN, individually and as beneficiary of the Trust Agreement Establishing Carrie Cederna Trusts – 1, 2, 3, 4, and 5 dated December 6, 1973, and the Trust Agreement Establishing Lorraine Trusts 1, 2, 3, 4, and 5, dated January 10, 1978; and BRUCE DETTERBECK, individually and as beneficiary of the Trust Agreement Establishing Carrie Cederna Trusts – 1, 2, 3, 4, and 5 dated December 6, 1973, and the Trust Agreement Establishing Lorraine Trusts – 1, 2, 3, 4, and 5, dated January 10, 1978, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants/Cross-Appellees, | ) ) | |
| v. | ) ) | No. 16 CH 02260 |
| JOHN DETTERBECK, individually, as Successor Co-Trustee of the Trust Agreement Establishing Carrie Cederna Trusts – 1, 2, 3, 4, and 5 dated December 6, 1973, and the Trust Agreement Establishing Lorraine Trusts – 1, 2, 3, 4, and 5, dated January 10, 1978, as owner and president of LESTER DETTERBECK ENTERPRISES, LTD., as Personal Representative of the ESTATE OF LESTER G. | ) ) ) ) ) ) ) ) | |

No. 1-22-0162

DETTERBECK, JR., and as Trustee of the LESTER G. )
DETTERBECK, JR. REVOCABLE TRUST DATED MAY 2, )
2005; BARBARA DETTERBECK, individually, and as )
Successor Co-Trustee of the Trust Agreement Establishing )
Carrie Cederna Trusts – 1, 2, 3, 4, and 5 dated December 6, )
1973, and the Trust Agreement Establishing Lorraine Trusts – )
1, 2, 3, 4, and 5, dated January 10, 1978; LESTER )
DETTERBECK ENTERPRISES, LTD., an )
Illinois corporation; CARRIER TRUST GROUP )
PARTNERSHIP; LORRAINE TRUST GROUP )
PARTNERSHIP; the ESTATE OF LESTER G. )
DETTERBECK, JR.; the LESTER G. DETTERBECK, JR.
REVOCABLE TRUST DATED MAY 2, 2005; and LEAF, )
DAHL & COMPANY, )
LTD., an Illinois corporation, )          Honorable
                                          )          Caroline K. Moreland,
          Defendants-Appellees/Cross-Appellants.          )          Judge, presiding.

_____

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The dismissal of counts VII and VIII of plaintiffs' fourth amended complaint is affirmed to the extent that claims against defendant accounting firm are based on conduct of a former trustee and thus barred by the statute of limitations and *laches*. However, dismissal of those counts is reversed to the extent that such claims are based on actions related to conduct of the successor co-trustees.

¶ 2    This case returns to us following our remand to the circuit court in *Detterbeck v. Detterbeck*, 2019 IL App (1st) 181113-U (*Detterbeck I*). We also recently issued an order in *Detterbeck v. Detterbeck*, 2022 IL App (1st) 210042-U (*Detterbeck II*) regarding a separate set of defendants. Relevant to this appeal, we held in *Detterbeck I* that the circuit court improperly dismissed claims against accounting firm Leaf Dahl & Co., Ltd. (Leaf), for alleged violations of the Illinois Public Accounting Act (the accounting act), 225 ILCS 450/1, *et seq.* (West 2016).

- 2 -

Accordingly, we restored that cause of action and remanded to the circuit court for further proceedings.

¶ 3    On remand, the circuit court granted Leaf's motion to dismiss counts VII and VIII of the fourth amended complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2020)). On appeal, plaintiffs argue that the dismissal was inconsistent with this court's decision in *Detterbeck I*, and thus violated the mandate rule and law of the case doctrine. For the following reasons, we affirm in part and reverse in part.

¶ 4                              I. BACKGROUND

¶ 5                            A. Initial Litigation

¶ 6    The factual background of this case is extensively detailed in *Detterbeck I* and *Detterbeck II*. We summarize it for convenience and to provide context for our current discussion.

¶ 7                              1. The Trusts

¶ 8    In 1973, plaintiffs, their youngest brother John Detterbeck, and their sister Cheryl Martin[1] were named as the primary beneficiaries of the Carrie Cederna Trusts 1, 2, 3, 4, and 5 (Carrie Trusts). Carrie Cederna, the beneficiaries' maternal grandmother, named the beneficiaries' father, Lester Detterbeck Jr., as the trustee. In 1978, Lester Detterbeck, Sr., executed a nearly identical trust agreement on behalf of plaintiffs, as well as John, and Cheryl under the Lorraine Trusts 1, 2, 3, 4, and 5 (Lorraine Trusts). Lester Jr. was also named trustee of the Lorraine Trusts.

---

[1] According to the fourth amended complaint, Martin passed away and her beneficiary shares were distributed evenly among her four siblings in accordance with the terms of the trust agreements. The complaint does not appear to identify the date of her death.

¶ 9    In 2008, Lester Jr. appointed his son John and John's wife Barbara as successor co-trustees for both sets of trusts. On August 24, 2015, Lester Jr. passed away. Shortly thereafter, John and Barbara accepted their appointments as co-trustees, retroactive to the date of Lester Jr.'s death.

¶ 10    During his time as trustee, Lester Jr. was also the owner of Lester Detterbeck Enterprises (LDE),[2] a family-run company which manufactures tools and replacement parts for the precision machine products industry. Plaintiffs all worked at LDE at some point in time, in various capacities, and for varying durations. After Lester Jr.'s death, John, who was named president of LDE in 1999, received 100% ownership of the company.

¶ 11    In the months following Lester Jr.'s death, John asserted that he reviewed all available records to facilitate the transition of the company and trusts. During his review, John found that each of the separate trusts did not have individual bank accounts. Instead, there was one bank account for the "Lorraine Trust Group" and another for the "Carrie Trust Group." On the advice of legal counsel, John and Barbara executed an "Amended and Restated Partnership Agreement" to join the Carrie Trusts into the Carrie Trust Group and the Lorraine Trusts into the Lorraine Trust Group. The agreements were signed on December 12, 2015, and purported to be continuations of the original partnership agreements, which could not be located.

¶ 12    After their father's memorial, John received emails from Lester III regarding the trusts. One of the e-mails requested copies of the original trust documents, in addition to recent accompanying tax returns and financial statements. After receiving some documents from John, Lester III sent another e-mail, asking to "work together" on the trusts. Lester III's second e-mail referenced two letters he sent to Lester Jr. in 1985 and 1986.

---

[2] LDE was formerly known as Form-Rite Tools, Inc. until the later 1980s.

¶ 13    The 1985 letter was written following a judge's ruling that the Carrie and Lorraine Trust Groups were marital property for purposes of Lester Jr.'s divorce from plaintiffs' mother. Lester III stated that he had "no problem" with the judge's ruling so long as his father began to operate and handle the trusts "in a fiduciary manner for the benefit of the beneficiaries." The letter continued, "[i]f on the other hand, the trusts will be operated as they have in the past or if they are system[ati]cally dissolved back into [LDE] or some other entity of yours, I think that mother and all of your children have 'been screwed.' " Lester III then demanded that their father share information with the beneficiaries regarding the content of the trusts, the present investments, the rights and responsibilities of the trustee and beneficiaries, contemplated distributions, and provisions regarding securing loans from the trusts.

¶ 14    The 1986 letter acknowledged that no response to the first letter had been received for over a year. Lester III accused his father of continuing to use the trust funds for his own personal benefit, despite the divorce decree declaring the funds as property of the beneficiaries instead of the parents. The letter asserted that the beneficiaries were entitled to "regular reporting, full disclosure, and objective and fiduciary handling of the trust funds" and that there was the possibility of suing to remove Lester Jr. as trustee if he did not provide the same. Lester III then requested that his father set in motion a plan to close the trusts and distribute the funds.

¶ 15    Despite his requests, Lester III was only able to review trust tax records from 2012, 2013, and 2014, as he was not provided a full accounting by the successor co-trustees. Lester III became concerned about the status of the trusts, and accordingly, on December 9, 2015, each plaintiff exercised their right under the trust agreement to request distribution of their respective trusts. Later, plaintiffs also issued a demand for a complete accounting of the trusts, which was not fulfilled. As a result, plaintiffs filed their initial complaint on February 17, 2016.

¶ 16                                    2. Procedural History

¶ 17                                 a. Fourth Amended Complaint

¶ 18    The complaint was amended four times to re-plead counts that were dismissed, add additional defendants and claims, and address other issues that arose during the proceedings. The operative complaint is the fourth amended complaint, filed on September 28, 2017. The eight-count complaint alleged, *inter alia*, that the trusts and their assets were wrongfully utilized and manipulated to fund LDE without adequate compensation and to the detriment of the trusts and the beneficiaries. We summarily note the substance of counts I through VI, setting forth in greater detail the substance of Counts VII and VIII, the allegations of which are the subject of this current appeal.

¶ 19    Count I alleged breach of fiduciary duty against Lester Jr.'s estate and trust, in that Lester Jr. had arranged for unreasonable oral leases of trust-owned equipment to LDE at below-market rates; generated unnecessary loans between the trusts and LDE at lopsided interest rates favoring LDE; removed and converted trust assets for personal use; and failed to provide proper accounting or keep standard books and records.

¶ 20    Count II alleged breach of fiduciary duty against John and Barbara as co-trustees, for wrongfully abandoning trust assets; allowing LDE to convert such assets, manipulating the books and records to provide inappropriate leases to LDE; and negotiating in bad faith liquidation of trust assets and their winding down procedures. John was also accused of removing assets from the trusts for personal use.

¶ 21    Count III alleged that Lester Jr., his estate, John, and Barbara failed to provide an accounting to the other beneficiaries.

¶ 22    Count IV alleged civil conspiracy, in that prior to Lester Jr.'s death in 2015, he, John, Barbara, LDE and the trusts improperly structured lease rates, and otherwise administered the trusts and partnerships to divert assets away from the trusts and to themselves to the detriment of the beneficiaries.

¶ 23    Count V alleged aiding and abetting of a breach of fiduciary duty against LDE, and the Carrie Trust and Lorraine Trust Groups. Specifically, count V alleged that Lester Jr., John, and Barbara, as managers and trustees of such entities, conspired and manipulated partnership assets, as well as the purchase of new and trade-in used equipment through artificial and improperly reduced lease payments. Count V also alleged that Lester Jr. had lent personal funds to the partnerships at above-market rates, while using the partnerships to lend funds to LDE at below-market rates, which improperly converted partnership assets.

¶ 24    Count VI alleged, in the alternative, unjust enrichment, against John, Barbara, LDE, and Lester Jr.'s estate and trusts for unlawfully benefitting from the use, conversion, and receipt of trust assets without any or adequate consideration, including a specific date of December 31, 2015 where various partnership equipment had been transferred to LDE for no consideration. As to John and Barbara, count VI alleged that they "caused the sale of Partnership equipment to LDE at fire-sale prices," with a specific reference to a sale in 2016. As to John, count VI alleged that he had "received a substantial amount of money from the Partnerships and paid no interest" for the period of time that he held the funds, again specifically pointing to a January 6, 2016 date. Lastly, as to Lester Jr., count VI alleged that he had "purchased a golf cart in 2006 for approximately $7,577.44 with Carrie Trust Group funds."

¶ 25    Relevant to this appeal, counts VII and VIII were directed against Leaf, an Illinois corporation that provides accounting, tax, and other services, in that Leaf had knowingly provided

professional services and administered the trusts in such a way that assisted in the trusts' exploitation and further violated portions of the Internal Revenue Service (IRS) Code.[3]

¶ 26    Count VII was a claim for aiding and abetting breach of fiduciary duty, alleging various conduct by Leaf with Lester Jr. as well as John and Barbara. Such conduct included the preparation of journal entries to inappropriately write-off trust assets as "abandoned" as of December 31, 2015 in violation of the IRS Code; collaborating with the trustees to prepare inaccurate and misleading trust records, financial statements, and tax returns; assisting Lester Jr. and John to create artificial and improper lease payments for the benefit of LDE; failing to properly report assets; and failing to use independent judgment during such conduct and assistance in violation of its applicable professional standards. Count VII specifically referenced services rendered by Leaf on February 9, 2016, which purportedly "eliminated over 55% of the trust assets."

¶ 27    Count VIII asserted a count for professional negligence. Such alleged conduct reiterated the acts described in count VII, as well as Leaf's failure to withdraw as the trusts' accounting firm once it became aware of such inappropriate action in dereliction of the American Institute of Certified Public Accountants Code of Professional Conduct and Statements on Quality Control Standards. Plaintiffs further alleged that Leaf had committed acts "discreditable to the profession by making materially false and misleading" financial records. This count also detailed specific events after Lester Jr.'s death, such as preparing journal entries that inappropriately wrote off trust assets as "abandoned" as of December 31, 2015, in contradiction to the IRS Code, and that Leaf's actions, "*in particular, the actions and omissions occurring at the end of 2015 and beginning of*

---

[3] In earlier iterations of the operative complaint, Leaf had been named as a respondent in discovery. On November 15, 2016, the circuit court granted plaintiffs' motion to convert Leaf's status from respondent to a defendant.

*2016*, call into question its compliance with professional standards when it became aware in November 2015 that winding-down discussions were in progress between the [s]uccessor [c]o-[t]rustees and the *** beneficiaries." (Emphasis added).

¶ 28                                    b. Leaf's Original Motion to Dismiss

¶ 29    On November 13, 2017, Leaf filed a combined motion to dismiss counts VII and VIII pursuant to section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2016).[4] First, pursuant to sections 2-619(a)(9) and (a)(5) of the Code, Leaf argued that both counts were untimely because they were based on conduct alleged to have occurred in the 1980s. Second, under both sections 2-619(a)(9) and 2-615, Leaf contended that plaintiffs failed to state a cause of action for aiding and abetting because the company had simply performed routine tax and accounting services, and only had a general awareness of trust activities which failed to rise to the level of knowing collusion with the trustees. Further, according to Leaf, none of the alleged acts were cognizable for aiding and abetting, as Leaf solely relied upon the information given to it by its client to perform ordinary financial services.[5] Third, pursuant to section 2-615, Leaf argued that it did not have any duty to the plaintiffs with regard to the professional negligence claim. Finally, Leaf argued that the plaintiffs failed to adequately plead damages.

¶ 30    On November 22, 2017, plaintiffs Wendi Gawne, Bruce Detterbeck, and Lester III filed a motion to continue Leaf's motion to dismiss pursuant to Supreme Court Rule 191(b), seeking leave to conduct discovery against Rubin's affidavit. Leaf filed a response in opposition, asserting that

---

[4] John, Barbara, and LDE also filed a section 2-619.1 motion to dismiss with some overlapping bases for dismissal, which is discussed in further detail in *Detterbeck II*.

[5] In support of its section 2-619(a)(9) motion to dismiss on this point, Leaf proffered the affidavit of Michael Rubin, a certified public accountant and co-owner of the company, which attested that Leaf had acted appropriately under professional standards, had not been retained to manage the trusts, and had no knowledge of any improper trust activity.

plaintiffs' request to depose Rubin was untimely, and that Rubin was not the only witness with knowledge of material facts related to its motion to dismiss. Plaintiffs filed a reply, asserting that discovery was needed due to Leaf's failure to respond to previous production requests, and that Rubin was the only one with knowledge of the material facts contained within his affidavit.

¶ 31    On January 12, 2018, Leaf filed a motion to withdraw its section 2-619 arguments, which included the statute of limitations argument and the section 2-619(a)(9) aiding and abetting argument supported by the Rubin affidavit.[6] Instead, Leaf sought only to continue with its section 2-615 arguments to dismiss the professional negligence claim. Its basis for withdrawal was that Rubin was unavailable to be deposed due to "health reasons" and that by withdrawing its section 2-619 arguments, there would be no need for plaintiffs to conduct discovery to respond to the remaining arguments. Thus, on January 22, 2018, by agreed order, Leaf withdrew its section 2-619.1 motion to dismiss and was ordered to answer count VII of plaintiffs' complaint for aiding and abetting.

¶ 32    On February 20, 2018, Leaf filed a verified answer to count VII for aiding and abetting, as well as various affirmative defenses and three counterclaims for contribution. That same day, Leaf filed a section 2-615 motion to dismiss solely on the professional negligence claim, which was virtually identical to the arguments raised in its original filing. Plaintiffs filed a response to Leaf's section 2-615 motion, arguing that they had sufficiently stated a claim for professional negligence

---

[6] We express no opinion as to whether the aiding and abetting argument, and its accompanying affidavit, were proper under section 2-619(a)(9) of the code. See *Mazal v. Arias*, 2019 IL App (1st) 190660, ¶ 18 (a section 2-619(a)(9) motion *admits all well-pleaded facts* and reasonable inferences). Rubin's affidavit, although filed in support of Leaf's section 2-619(a)(9) motion, appears to challenge the factual assertions made within the plaintiffs' complaint, which would be procedurally improper. Further, it is unclear why Leaf withdrew its statute of limitations argument, which did not appear to implicate any part of Rubin's affidavit or his ability to testify.

under the accounting act. Leaf filed a reply, reiterating the arguments set forth in its opening motion.

¶ 33 On April 17, 2018, the circuit court heard arguments on Leaf's section 2-615 motion to dismiss the claim for professional negligence and issued an oral ruling granting Leaf's motion with prejudice.

¶ 34 On April 30, 2018, following hearing on the other defendants' motion to dismiss, the circuit court dismissed all remaining counts of the complaint with prejudice pursuant to the statute of limitations, reasoning that the 1985 and 1986 letters showed that plaintiffs had long been aware of Lester Jr.'s alleged mismanagement of the trusts. Notably, although Leaf had already answered count VII (aiding and abetting), the circuit court also dismissed this count *sua sponte* on the same grounds, reasoning that a claim against Leaf for aiding and abetting could not survive without any remaining claims against the other defendants.

¶ 35                                    c. *Detterbeck I*

¶ 36 Plaintiffs appealed the dismissal of all counts. In their brief, plaintiffs argued that the issues on appeal were:

> "1. Whether the [c]ircuit [c]ourt erred in finding—as a matter of law under [section] 2-619—the statute of limitations barred trust beneficiaries from bringing any claim— including claims based on conduct occurring within the limitations period—against either their Initial Trustee—their Father—or his Successor Trustees (*and those who acted in concert with them*), arising from Trustees' breaches of fiduciary duty, including misappropriating Trust assets, because Beneficiaries did not sue when Father failed to provide an accounting or answer one Beneficiary's generalized questions about the Trusts years before the relevant misconduct occurred;

2. Whether the [c]ircuit [c]ourt erred in finding—as a matter of law under [section] 2-615—Beneficiaries could not sue the Trusts' accounting firm, Leaf, on the ground that it owed them no duty, even though the Trusts existed for the Beneficiaries' sole benefit and Leaf defrauded Beneficiaries by preparing and supplying false K-1 forms and other misinformation." (Emphasis added).

¶ 37 With regard to the aiding and abetting claim, plaintiffs appeared to address the statute of limitations theory as to *all* defendants, albeit without any specific reference to Leaf. However, when arguing that plaintiffs had adequately stated a claim for aiding and abetting, plaintiffs asserted that "Leaf aided and abetted the Trustees in their breaches, *inter alia*, by knowingly filing false tax returns and other documents which hid wrongdoing."

¶ 38 Both Leaf and the remaining defendants filed response briefs. Leaf contended that because the circuit court had correctly dismissed the breach of fiduciary claims against the trustee and successor co-trustees, dismissal for aiding and abetting was also necessary. Leaf further argued that plaintiffs' claims were time barred and otherwise barred by *laches*, and as such adopted the arguments of John, Barbara, LDE, and the estate of Lester Jr. on these points.[7] In reply, plaintiffs generally addressed all defendants' *laches* arguments, and briefly reiterated that they properly stated a claim for aiding and abetting.

¶ 39 In *Detterbeck I*, 2019 IL App (1st) 181113-U, we affirmed the dismissal of several counts of the operative complaint but reversed and remanded in part as to other counts. In particular, we found that claims against Lester Jr. and his estate were barred under the statute of limitations. *Id.* ¶ 46. We noted that the statute of limitations period for a breach of fiduciary duty claim is five

_____

[7] As delineated further in *Detterbeck I*, John, Barbara, and LDE argued that plaintiffs' claims were barred by the statute of limitations, or alternatively, *laches.*

years and plaintiffs had initiated suit on February 17, 2016, more than five years after Lester Jr.'s alleged wrongful conduct. See *Id.* ¶ 32. As such, we held that the claims raised in the complaint "should then be focused on causes of action accruing on or after February 17, 2011." *Id.* ¶ 33. We rejected plaintiffs' argument that they first realized their injuries caused by Lester Jr.'s administration of the trusts in 2015. *Id.* Although we recognized that many of the allegations of wrongdoing occurred after the 1985 and 1986 letters, we found that plaintiffs could not "benefit from their willful ignorance of their father's loose practices in regard to the trusts' administration[,]" of which they were aware as early as the 1980s. *Id.*

¶ 40    Additionally, we found that *laches* applied to the remainder of the claims against Lester Jr. arising from conduct occurring between 2011 and his death in 2015. *Id.* ¶ 54. We reasoned that plaintiffs' 40 years of inaction constituted unreasonable delay, especially where the deaths of two key witnesses during that time prejudiced defendants. *Id.* ¶ 52.

¶ 41    However, with respect to claims against John and Barbara, we found that any action taken by them as co-trustees was within the statute of limitations period because they "accepted their appointment as successor trustees in November 2015, with retroactive effect to the day after Lester Jr.'s death on August 24, 2015," and the complaint had been filed in 2016. *Id.* ¶ 58. We also found that *laches* did not apply to them because there was no unreasonable delay between the filing of the complaint and when John and Barbara's actions allegedly occurred. *Id.* For instance, we found that claims of improper abandonment of the trusts' assets in December 2015 were raised without delay and within the statute of limitations. *Id.* ¶ 61. However, we cautioned that the "amended complaint still contain[ed] other allegations that are not specific as to when they occurred, and appear intertwined with the allegations against Lester Jr." *Id.* This was important because "John

and Barbara may only be held liable for any actions they took after accepting their appointment as co-trustees" and "that claims against Lester Jr. through his estate were properly dismissed." *Id.*

¶ 42 With regard to the professional negligence claim against Leaf, we held that the circuit court improperly dismissed this claim. *Id.* ¶¶ 68, 70. Although we recognized that accounting firms generally cannot be held liable for civil damages to third parties, we noted that the accounting act contained two exceptions for fraud or intentional misrepresentation, or if the accountant "was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action." *Id.* ¶ 65. We determined that the complaint had adequately pled those exceptions, and thus survived a section 2-615 motion to dismiss. *Id.* ¶ 70.

¶ 43 However, our disposition was silent as to whether the claims would otherwise be barred by an affirmative matter, such as the statute of limitations or *laches.* Thus, we did not address whether the circuit court's *sua sponte* dismissal of the aiding and abetting claim was still actionable, despite the restoration of certain claims for breach of fiduciary duty, or the professional negligence claim, even if sufficiently pled.

¶ 44 On February 4, 2020, this court issued its mandate in accordance with *Detterbeck I.* The mandate did not contain any instructions but stated that the circuit court's decision was "[a]ffirmed in part and reversed in part."

¶ 45                                3. Litigation on Remand

¶ 46 On remand, plaintiffs filed a motion to reinstate the case and for a case management conference in the circuit court. John, Barbara, and LDE filed a response, agreeing that the case should be reinstated, but asserting that the fourth amended complaint was deficient as it continued to rely on allegations that *Detterbeck I* had found inactionable, and thus required amendment. Plaintiffs filed a reply, arguing that it was not required to file a new complaint because we had not

issued a mandate to do so in *Detterbeck I*. Plaintiffs thus sought relief for every defendant to answer the remaining claims and move forward with the litigation.

¶ 47    On July 8, 2020, the circuit court entered an order to reinstate the case. The court did not expressly address the parties' arguments regarding amending the complaint based on *Detterbeck I*, but ordered that defendants answer "the remaining counts of the fourth amended complaint."[8]

¶ 48                                        a. *Detterbeck II*

¶ 49    Although *Detterbeck II* was issued during the pendency of the current appeal, we briefly summarize it here. There, we held that the circuit erred in dismissing counts IV-VI against John, Barbara, and LDE. 2022 IL App (1st) 210042-U, ¶ 60. Although we agreed with the circuit court that dismissal of the allegations against Lester Jr. was proper pursuant to *Detterbeck I*, complete dismissal of those three counts was improper because they contained actionable allegations against John and Barbara as co-trustees. Plaintiffs were expressly directed to amend their complaint to conform to *Detterbeck I* and *II*.

b. Leaf's Motion to Dismiss based on Law of the Case

¶ 50    On remand and in conjunction with the other defendants' motions to dismiss, Leaf filed a section 2-619(a)(9) motion to dismiss counts VII and VIII of the fourth amended complaint pursuant to *Detterbeck I*. Leaf argued that the law of the case doctrine warranted dismissal of claims against Leaf as the conduct "occurred contemporaneously and in concert with Lester Jr.," and that because claims against Lester Jr. had been dismissed pursuant to *Detterbeck I*, so too should claims against Leaf pursuant to the statute of limitations or *laches*. Further, Leaf argued

_____

[8] Defendants John, Barbara, and LDE also filed a second section 2-619.1 motion to dismiss counts IV, V, and VI, which is addressed more fully in *Detterbeck II*. One of the bases for dismissal was the law of the case doctrine as applied to them. The circuit granted that motion in its entirety and dismissed those counts with prejudice.

that the aiding and abetting claim had to be dismissed because it was not an independent tort, and was tied to the actions of the original trustee, Lester Jr.

¶ 51    Plaintiffs filed a response, opposing dismissal. Plaintiffs contended that the claim for professional negligence had been "unambiguously restored," and thus by implication, so too had the claim for aiding and abetting. Plaintiffs also pointed out that Leaf had previously filed an answer to the claim for aiding and abetting prior to *Detterbeck I*, so therefore, as a matter of procedure, Leaf's answer had been restored. Further, according to plaintiffs, Leaf had "waived" its right to file a second 2-619 motion when it had previously withdrawn its original section 2-619 arguments prior to *Detterbeck I*. Finally, plaintiffs contended that its claims against Leaf were not barred by either *laches* or the statute of limitations.

¶ 52    Leaf filed a reply, rejecting plaintiffs' contention that it had waived any right to file a new motion. Further, Leaf reasoned, filing a motion based on the law of the case doctrine was not procedurally improper because it was asking the circuit court to follow the mandate set forth in *Detterbeck I*.

¶ 53    On January 26, 2021, the circuit court entered an order, indicating that it would rule on Leaf's pending motion to dismiss on or before April 2, 2021.[9]

¶ 54    On February 4, 2021, defendants John, Barbara, and Leaf filed a joint motion to stay the circuit court proceedings pending disposition of *Detterbeck II* in order to "avoid *** proceeding

---

[9] We place these orders into the summary of the case on remand, because it appears that there was some miscommunication between the parties and the circuit court as to when Leaf's motion to dismiss would be resolved, given that its motion was filed on or about the same time as the other defendants' motion. As such, the circuit court ruled on John, Barbara, and LDE's motion, which led to *Detterbeck II*, but did not take up Leaf's at that time.

in piecemeal fashion[.]" On February 25, 2021, the circuit court entered an order on the motion to stay, which "entered and continued [the motion] until March 2, 2021" for ruling.[10]

¶ 55 On November 8, 2021, the circuit court entered a written order on Leaf's motion to dismiss, which granted the motion in part with regard to the statute of limitations argument and dismissed counts VII and VIII with prejudice.

¶ 56 Initially, the circuit court observed that the law of the case set forth in *Detterbeck I* had only addressed whether *laches* barred a breach of fiduciary duty claim against Lester Jr., John, and Barbara, but not as to Leaf. Nevertheless, the circuit court found that discussion "helpful," and determined that any claims against Leaf were also unreasonable due to the decades-long delay. However, the court further determined that Leaf was not prejudiced by the delay because, in contrast to Lester Jr., Leaf was a corporation that assumably had "institutional knowledge" regarding the trusts' administration and would not suffer from any lack of documentation. The court further reasoned that Leaf had alternative witnesses who could testify to professional services rendered over the course of its involvement. Accordingly, the circuit court denied Leaf's motion as to *laches.*

¶ 57 With regard to Leaf's motion to dismiss on statute of limitations grounds, the court first determined the limitations period under the accounting act was two years, subject to the discovery rule. The circuit court reasoned that, at the latest, plaintiffs were aware of their claims against their father since 1986, and that pursuant to *Detterbeck I*, such knowledge was also imputed to Leaf. As

---

[10] Our review of the record does not indicate any entered order for March 2, 2021. However, according to the public record, no case activity occurred between February 2021 to November 2021, indicating a potential stay of the matter. The record also does not show any order entered on April 2, 2021, which was the projected ruling date on Leaf's motion to dismiss.

such, the circuit court granted the motion to dismiss as to both counts with prejudice and indicated that its order was "final and appealable."

¶ 58    On January 25, 2022, plaintiffs filed an unopposed motion for certification of appeal pursuant to Illinois Supreme Court Rule 304(a). The circuit granted the motion on January 31, 2022, finding that there was "no just reason for delaying either enforcement or appeal or both" of the court's November 8, 2021 memorandum order and opinion.

¶ 59    This appeal followed.

¶ 60                                II. ANALYSIS[11]

¶ 61    On appeal in what is now *Detterbeck III*, plaintiffs argue that the circuit court violated the law of case doctrine and the mandate rule by dismissing the claims for aiding and abetting and professional negligence against Leaf.

¶ 62                                A. Jurisdiction

¶ 63    Although not raised by either party, it is our duty to assess our jurisdiction to review this appeal, which is only established when a party files a timely notice of appeal. *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 556 (2009). Here, we deem it appropriate to address the timeliness of plaintiffs' notice of appeal. The record reflects that the circuit court entered an order granting Leaf's motion to dismiss on November 8, 2021, but plaintiffs did not file a notice of appeal until more than thirty days after, on February 7, 2022. Thus, at first blush, it would appear that the plaintiff's notice of appeal was untimely pursuant to Supreme Court Rule 303. See Ill. S. Ct. R. 303(a) (eff. July 1, 2017) (final judgments of the circuit

---

[11] On March 16, 2022, Leaf filed a cross-appeal. This court granted plaintiffs' motion to dismiss the cross-appeal on June 13, 2022.

court in civil cases must be appealed within 30 days after entry of the final judgment, or 30 days after the entry of judgment against a timely post-judgment motion directed at that final judgment).

¶ 64    However, we also observe that on January 25, 2022, plaintiffs filed an unopposed motion for Supreme Court Rule 304(a) language and certification, wherein plaintiffs stated that the circuit court's ruling had been delayed for multiple months and apparently had never been sent to the parties once it was issued. Plaintiffs argued that the court's "final and appealable language" contained within the November 8 order was deficient under Supreme Court Rule 304(a). Plaintiffs further reasoned that the judgment was only interlocutory because the case was still active against other defendants, and thus the circuit court still had authority to revise its interlocutory order and allow plaintiffs to pursue this third appeal. The court granted plaintiffs' motion on January 31, 2022, indicating that pursuant to Supreme Court Rule 304(a), there was "no just reason for delaying either enforcement or appeal or both" of the Court's November 8 order.

¶ 65    A notice of appeal generally may not be filed until the trial court has disposed of all claims. *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 341 (2001). "Put another way, appellate jurisdiction generally only exists to review final orders." *State Farm Fire & Casualty Co.*, 394 Ill. App. 3d at 556. A final order is one that "disposes of the rights of the parties, either upon the entire controversy or upon some define and separate part thereof." *Treece v. Shawnee Community Unit School District No. 84*, 39 Ill. 2d 136, 139 (1968).

¶ 66    However, Supreme Court Rule 304(a) allows for the filing of a notice of appeal of a final judgment against certain, but *not all*, parties in the circuit court. Ill. S. Ct. R. 304(a) (eff. March 8, 2016). Specifically, the rule provides that:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal
>
> may be taken from *a final judgment as to one or more but fewer than all of the parties or*

*claims only if the trial court has made an express finding that there is no just reason for delaying either enforcement or appeal or both.* Such a finding may be made at the time of entry of the judgment or thereafter on the court's own motion or on motion of any party. \*\*\* In the absence of such a finding, *any judgment that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all of the parties is not enforceable or appealable* and *is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of the parties.*" Ill. S. Ct. R. 304(a) (eff. March 8, 2016). (Emphasis added).

¶ 67 "Absent [a Rule 304(a) finding], if an order resolves one claim against one party, but other claims and/or other parties remain pending, an appeal from the final order must wait until the other matters have been resolved." *State Farm Fire & Casualty Co.,* 394 Ill. App. 3d at 556. The absence of the exact language contained in Rule 304(a) is not necessarily fatal to jurisdiction if it is clear that the circuit court intended to invoke it. See *In re Application of DuPage County Collector*, 152 Ill. 2d 545, 549-550 (1992).

¶ 68 Here, the circuit court's granting of Leaf's motion eliminated the two counts aimed at the company. However, at the time of the judgment, three counts of the fourth amended complaint were still pending on appeal in *Detterbeck II*, and according to plaintiffs' motion, John and Barbara had answered count II of the complaint. Thus, although the circuit court's November 8 order resolved claims specifically against Leaf, it did not entirely dispose of the case.

¶ 69 We acknowledge that the November 8 order stated that it was a "final and appealable order," but, as noted by the plaintiffs in their motion before the circuit court, the requisite language required for a Rule 304(a) finding was absent from the order. This language was subsequently included in the circuit court's January 31 order granting plaintiffs' motion for a Rule 304(a)

finding, and plaintiffs filed a notice of appeal within 30 days of that order. Thus, the record suggests that, at the time of issuance, the circuit court did not intend for its November 8 order to be a final and appealable interlocutory order for purposes of Rule 304(a). As such, we find that the notice of appeal was timely filed from the January 31 modified order, and that we do have jurisdiction over this appeal.

¶ 70                                B. Standard of Review and Waiver

¶ 71    Turning to the merits, plaintiffs contend that the standard is *de novo*, and Leaf agrees that *de novo* is appropriate for review of the circuit court's dismissal of its section 2-619 motion to dismiss. However, in its response brief, Leaf notes additionally that the court's ruling to allow refiling of its section 2-619 motion after Leaf's answer to Count VII of the complaint had already been filed is reviewed for abuse of discretion.[12]

¶ 72    We agree with the parties that *de novo* review is appropriate for resolution of the circuit court's November 8 order, where it dismissed counts VII and VIII pursuant to section 2-619(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2-619 (West 2016). "A section 2-619(a)(9) motion to dismiss admits the legal sufficiency of the complaint, admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint that bars or defeats the action." *Mazal*, 2019 IL App (1st) 190660, ¶ 18. When ruling on such a motion, the circuit court construes the pleadings in the light most favorable to the non-movant and should only grant the motion "if the plaintiff can prove no set of facts under the pleadings which will entitle

---

[12] Leaf's observation regarding the abuse of discretion standard is clearly related to plaintiff's contention both below and here on appeal that Leaf "waived" its ability to file a second section 2-619 motion, after it previously withdrew its original section 2-619 motion, which had been filed prior to *Detterbeck I*. We agree with Leaf that the proper standard of review of plaintiffs' waiver argument is abuse of discretion, and we review the argument in that context below. See *Premo v. Falcone*, 197 Ill. App. 3d 625, 629 (1990) (trial court properly exercised discretionary authority in allowing withdrawal of an answer to file a motion to dismiss as there was no prejudice to the plaintiff).

the plaintiff to recover." *Id.* ¶ 18. As our review is *de novo,* we may affirm the trial court's judgment on any basis in the record. *Id.* ¶ 17.

¶ 73    Prior to proceeding with review of Leaf's section 2-619 motion, we pause to address plaintiffs' waiver contention. Specifically, plaintiffs argue that Leaf waived its right to file a second section 2-619 motion when it voluntarily withdrew its first section 2-619 motion, prior to the circuit court's ruling that formed the basis of *Detterbeck I.* Plaintiffs assert that Leaf's voluntary withdrawal was intended to protect one of its current owners from deposition, but regardless of the reason, plaintiffs contend that having withdrawn the original motion, Leaf should not have been allowed a second opportunity to refile. By allowing Leaf to do so, according to plaintiffs, the circuit court "erroneously allowed it to engage in serial motion practice[.]" Plaintiffs rely on *Vangsness v. Deutsche Bank National Trust Co.*, No. 12-C-50003, 2013 WL 3031017 (N.D. Ill. June 17, 2013), an unpublished federal court order, as demonstrative of Leaf's "egregious" conduct.

¶ 74    We preliminarily note that plaintiffs fail to cite to any controlling Illinois authority to support their waiver argument. Further, they devote a mere two paragraphs in support of their claim, one devoted to a statement of their argument and the other to a recitation of the facts in *Vangsness,* their single citation. Generally, we would deem this argument to be forfeited, as it is insufficiently developed for purposes of appellate review pursuant to Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (appellant's brief must contain contentions along with citation to the authorities and pages in the record upon which it relies, and "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on a petition for rehearing."); see also *Block 418, LLC v. Uni-Tel Communications Group, Inc.*, 398 Ill. App. 3d 586, 590 (2010) (party forfeited issue due to undeveloped contentions.). Further, we are not bound by the outcome or

reasoning of a federal trial court, let alone an unpublished slip order. *Corbett v. Devon*, 12 Ill. App. 3d 559, 567 (1973).

¶ 75    Even if we were so bound, we find *Vangsness* is distinguishable. There, plaintiffs brought an action against a defendant bank and mortgage servicing company. No. 12-C-50003, 2013 WL 3031017, at *1. The plaintiffs filed an amended complaint following the granting of the defendant's first motion to dismiss, and defendants filed a new motion thereafter. *Id.* According to the district court, the new motion advanced arguments that could have been addressed in the initial motion, as it was based on exhibits attached to the complaint and plaintiffs' failure to allege damages. *Id.* The court determined that it would not consider "serial motions to dismiss" on the same issue and denied the new motion to dismiss in part, stating that such arguments were to be reserved for summary judgment or at trial. *Id.*

¶ 76    Besides the fact that *Vangness* is not precedential or binding for purposes of our review, we also observe that the federal district court's decision to reject defendant's new arguments appears to have been discretionary, as that portion of the order does not cite any authority in support of its decision to not address those arguments.

¶ 77    Forfeiture concerns aside, we find no basis upon which to assign error in allowing Leaf to file a second section 2-619 motion. Section 2-619(a) provides that a defendant "may, *within the time for filing*, file a motion for dismissal of the action or for other appropriate relief[.]". 735 ILCS 5/2-619(a) (West 2016). (Emphasis added). Section 2-619(d) also states that the raising of any such matters by motion "does not preclude the raising of them subsequently by answer unless the court has disposed of the motion *on its merits*; and a failure to raise any of them by motion does not preclude raising them by answer." *Id.* 735 ILCS 5/2-619(d) (West 2016). (Emphasis added); see also *Tyler v. J.C. Penny Co., Inc.*, 145 Ill. App. 3d 967, 971-972 (1986) (although "[n]ormally,

a motion to dismiss under section 2-619 will be filed in lieu of any other responsive pleading," courts have also allowed "objection[s] to a complaint [to] be raised at any time."). Even where the trial court has denied a defendant's motion to dismiss and an answer is then filed, our supreme court has rejected the notion that the mere filing of that answer forever waives the right to challenge a complaint. *People v. $1,124,905 U.S. Currency and One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 333 (1997) (citing *Ingersoll v. Klein*, 46 Ill. 2d 42, 44 (1970) (finding that defendant's originally filed answer did not constitute waiver of their subsequent right to challenge the sufficiency of the complaint)). Further, the circuit court has discretion to allow a defendant to withdraw an answer and file a motion to dismiss so long as there is no prejudice to the plaintiff. *Premo v. Falcone,* 197 Ill. App. 3d 625, 629 (1990); see also *Wheeler v. Caterpillar Tractor Co.*, 123 Ill. App. 3d 539, 541-542 (1984), *rev'd on other grounds*, 108 Ill. 2d 502 (1985) (holding that circuit court's allowing of defendant to withdraw an answer filed two years earlier, in order to file a motion to dismiss for failure to state a cause of action, was not an abuse of discretion).

¶ 78     Beyond plaintiffs' general contention that they have now waited "more than six years to begin litigating their claims," plaintiffs do not argue that they were in any way prejudiced by the court's grant of Leaf's motion to file a second 2-619 motion to dismiss, and indeed, we can perceive none. We are aware that at the time of the court's *sua sponte* dismissal of the aiding and abetting count (which was not addressed in *Detterbeck I*), Leaf had already withdrawn its motion to dismiss, and only its answer to the fourth amended complaint to the count for aiding and abetting remained. Thus, Leaf's first motion to dismiss was not then before the court. Even so, we recognize the unique procedural posture of this case and must decline to find that Leaf's answer waived any defects in the complaint. Leaf's second motion to dismiss came only after our ruling in *Detterbeck I*. Plaintiffs ignore that the crux of Leaf's motion concerned its interpretation of *Detterbeck I* and

the need to amend the operative complaint based on the law of the case set forth therein. The circuit court's allowance and consideration of Leaf's second section 2-619 motion to dismiss, came only after the court had been apprised of the operative complaint's deficiencies by other defendants immediately after remand from *Detterbeck I*.

¶ 79    We are mindful that pleadings and amendments are to be liberally construed "for the purpose of doing substantial justice between the parties and determining cases according to the substantive rights of the parties[.]" See *Ingersoll*, 46 Ill. 2d at 44.  In light of the unique progression in this case, we do not consider Leaf's second motion to dismiss to have been improper. Neither do we find the court's allowance to have permitted "serial motion practice" or to have been an abuse of discretion. Thus, we find plaintiffs' waiver contention to be meritless, and now turn to the main issues on appeal, whether the circuit court improperly dismissed counts VII and VIII.

¶ 80                    C. Law of the Case and the Mandate Rule

¶ 81    We finally reach the narrow issue before us, namely whether the circuit court's dismissal of counts VII and VIII of the fourth amended complaint was consistent with *Detterbeck I* and *Detterbeck II*, that is, with the law of the case. The parties agree that *Detterbeck I* did not address claims against Leaf with regard to the statute of limitations or *laches*. However, plaintiffs contend that the claims against Leaf are still operative given our previous ruling in *Detterbeck I*, where we restored the professional negligence claim. Leaf disagrees, reasoning that because Leaf was alleged to have acted in concert with Lester Jr., such claims must also be considered time-barred and no longer actionable.

¶ 82    We first set forth the defining principles of the law of the case doctrine. The doctrine bars the relitigating of an issue *previously decided* in the same case. *Long v. Elborno*, 397 Ill. App. 3d 982, 989 (2010). (Emphasis added). "[W]hen a court decides upon a rule of law, that decision

should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Application of the doctrine is not limited to the court's explicit decisions but applies equally to those issues decided by necessary implication. *CE Design Ltd. v. C & T Pizza, Inc.*, 2020 IL App (1st) 181795, ¶ 32. The doctrine protects the parties' settled expectations, ensures uniformity of decisions, maintains consistency during the course of a single case, effectuates proper administration of justice, and brings litigation to an end. *Petre v. Kucich*, 356 Ill. App. 3d 57, 63 (2005). Issues previously decided include issues of both law and fact. *Alwin v. Village of Wheeling*, 371 Ill. App. 3d 898, 910 (2007). "Questions of law that are decided on a previous appeal are binding on the trial court on remand as well as on the appellate court in subsequent appeals." *Long*, 397 Ill. App. 3d at 989.

¶ 83    However, the doctrine is not necessarily a limit on the power of the court. *Lurie v. Wolin*, 2017 IL App (1st) 161571, ¶ 30. "[A] court may depart from the law of the case to correct clerical mistakes, to clarify its opinion or mandate, to remedy fraud on the court or other misconduct, to avoid divergent results in cases pending simultaneously, or to minister to other similar aberrations." *Id.* (quoting *Laffey v. Northwest Airlines, Inc*., 642 F.2d 578, 585-86 (D.C. Cir. 1980)). Because application of the law of the case doctrine is a question of law, our standard of review is *de novo*. *In re Christopher K.,* 217 Ill. 2d 348, 363-64 (2005).

¶ 84    Prior to addressing the merits, as we did in *Detterbeck II*, we consider the circuit court's jurisdiction following *Detterbeck I*. As noted by the plaintiffs, our mandate in *Detterbeck I* contained no specific instructions with regard to any of the defendants on remand. See *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 28 (a reviewing court's mandate vests the trial court with jurisdiction only to take action on remand that complies with the mandate). Accordingly, a circuit

court must then examine the governing order to take action consistent with the language of the opinion. *Id.*

¶ 85 In *Detterbeck I*, we found that plaintiffs had sufficiently pled a claim for professional negligence to survive a section 2-615 motion. 2019 IL App (1st) 181113-U, ¶ 70. However, we did not address whether the statute of limitations or *laches* precluded that same claim from moving forward. Nor did we address the circuit court's *sua sponte* dismissal of the aiding and abetting claim, which plaintiffs sparingly mentioned in its brief on appeal but was more extensively discussed by Leaf in response. As such, with regard to Leaf, we did not set forth the law of the case on any issue beyond the sufficiency of the professional negligence claim, and cannot say that the circuit court disregarded the law of the case set forth in *Detterbeck I.*

¶ 86 Instead, the circuit court correctly recognized that we had not discussed *laches* and the statute of limitations as to Leaf but noted that our discussion as to the other remaining defendants was "helpful" in its resolution of Leaf's motion on remand. Accordingly, it reasonably applied our *laches* discussion as to Lester Jr. to Leaf based on the principles set forth in *Detterbeck I*. However, the court's blanket dismissal of counts VII and VIII overlooked the fact that both counts contained allegations not solely against Lester Jr., but also against John and Barbara, who were not addressed in the court's November 8 dismissal order.

¶ 87 However, the law of the case doctrine applies not just to the court's explicit decisions, but also to those issues, of both fact and law, decided by necessary implication. *CE Design Ltd. v. C & T Pizza, Inc.*, 2020 IL App (1st) 181795, ¶ 32. In *Detterbeck I* and *II,* we did address *laches* and the statute of limitations as applied to Lester Jr., the holdings of which are still binding on our resolution of subsequent appeals. *Long*, 397 Ill. App. 3d at 989. Further, both parties argued the issues of *laches* and statute of limitations as applied to Leaf before the circuit court, and the court

resolved both issues on the merits. Because our review is *de novo*, we may take up both issues now.[13]

¶ 88                                    1. Statute of limitations

¶ 89    Plaintiffs argue that the circuit court erred in dismissing its claims against Leaf because it ignored the complaint's allegations that Leaf had also engaged in wrongdoing with John and Barbara within the statute of limitations period. Alternatively, plaintiffs suggest that the limitations period was tolled based on Leaf's "active[] conceal[ment]" and plaintiffs should be permitted to bring forth claims dating back five years from the filing of the complaint, citing a published federal district court case, *Bank of America, N.A. v. Knight*, 875 F. Supp. 2d 837 (N.D. Ill. 2012) in support.

¶ 90    In response, Leaf argues that any actions taken with Barbara and John as co-trustees are "indistinguishable" from the alleged malfeasance identified in 1985 or 1986 with Lester Jr., and thus any potential claims against Leaf have also long since expired.

¶ 91    Preliminarily, it is important to distinguish between the statute of limitation periods at issue. With regard to count VIII for professional negligence, the accounting act provides that actions alleging accountant malfeasance is limited to two years "from the time the person bringing an action knew or should have reasonably known of such act or omission," or five years pursuant to the statute of repose. 735 ILCS 5/13-214.2(a), (b) (West 2016). As to the statute of limitations for count VII, aiding and abetting a breach of fiduciary duty, that time period is five years. See

---

[13] Leaf also contends that plaintiffs' arguments concerning *laches,* or the statute of limitations have been waived or forfeited due to their failure to comply with Supreme Court Rule 341(h)(7). Leaf complains that plaintiffs "spill over two pages of ink with but a single citation to the record" and only cite one case, and as such do not merit consideration on appeal. Our review of appellant's brief confirms Leaf's contention. However, we also recognize the procedural posture upon our involvement with this appeal, as well as the fact that such arguments were previously raised by Leaf in *Detterbeck I* without our subsequent resolution. In the interest of moving this almost seven-plus year litigation forward, we will resolve the issues of *laches* and statute of limitations on the merits as ought to have been done in *Detterbeck I.*

735 ILCS 5/13-205 (West 2016) (stating that civil actions without a specified statute of limitations "shall be commenced within five years next after the cause of action accrued."). When determining when an applicable statute of limitations begins to toll, Illinois uses the discovery rule, which delays the commencement of the two-year statutory period until when the plaintiff knew or reasonably should have known of its injury. See *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (1995); see also *Lane v. Deutsche Bank AG,* 2015 IL App (1st) 142968, ¶ 18. It is not necessary that a plaintiff knows the full extent of the injury, only that the plaintiff has been put on notice of the need to investigate further. *Clay v. Kuhl*, 189 Ill. 2d 603, 611-12 (2000).

¶ 92    The circuit court found that claims against Leaf were barred because the company had been administering the trusts with Lester Jr. since 1973, and as demonstrated by the letter written by Lester III to his father, Lester Jr., plaintiffs had actual knowledge of some wrongdoing as early as 1985 and 1986. The circuit court did not address any of the allegations against Leaf that involved actions taken by John and Barbara in 2015 and 2016. The circuit court also did not distinguish between the differing limitations periods for aiding and abetting and professional negligence.

¶ 93    We find that the circuit court erred in part by granting a blanket dismissal of counts VII and VIII against Leaf. As we noted in *Detterbeck I,* plaintiffs could not avail themselves of the discovery rule to toll the statute of limitations as to the breach of fiduciary duty claims against Lester Jr. and his estate. 2019 IL App (1st) 181113-U, ¶ 34. We acknowledged that many portions of plaintiffs' complaint alleged that they had been unaware of any true insight as to their father's administration of the trusts, particularly because they had been denied a proper accounting from at least 1973 until 2015, and only gained insight about their father's alleged misuse of such assets after his death. *Id.* ¶ 38. However, our analysis turned on the fact that the letters between Lester III and his father indicated that there was some general awareness that Lester Jr.'s actions were

wrongful, especially highlighted by the fact that Lester III had threatened to file suit against his father. *Id.* ¶ 40. We found that these communications "overwhelm[ed] any claim that discovery of such injury was not possible until *** review in 2015," particularly when such letters stated "[c]ertainly you have breached your powers and responsibilities as trustee." *Id.* We further noted that although many of the allegations of wrongdoing also occurred after those communications, the accusations "raised informally in 1985 and 1986" were nonetheless "closely related to the claims now brought regarding the self-serving loan practices, leases with LDE, and misuse of trust assets for personal gain." *Id.* Thus, it was "objectively apparent that plaintiffs knew enough to be reasonably appraised of the need for further inquiry." *Id.*

¶ 94      We also rejected any claims of fraudulent concealment, where plaintiffs claimed that their "father's shortcomings in communication and accounting prevented from knowing of the injury at all." *Id.* ¶ 41. We found the 1985 and 1986 letters to be "informal demands" upon which plaintiffs failed to act on until their father's death. *Id.*, ¶¶ 41, 46. As such, with regard to actions against Lester Jr., we determined that the statute of limitations applied to actions prior to 2011 and thus were properly dismissed.

¶ 95      With regard to Leaf in this appeal, we hold that the same reasoning applies. Plaintiffs do not allege that they were unaware of Leaf's involvement with the administration of the trusts and other professional services rendered to Lester Jr. Indeed, this was not a case of plaintiffs only recently discovering that Leaf was the accounting firm facilitating such conduct until after Lester Jr.'s death. Rather, the fourth amended complaint alleges that Leaf had been administering the trusts since 1973, that all defendants had been long-time clients of the company even before the trusts had ever been established, and that plaintiffs had been repeatedly denied an accounting. Thus, by becoming reasonably apprised of Lester Jr.'s potential misdeeds, plaintiffs cannot escape

the conclusion that they would have been also apprised of Leaf's potential collaborative conduct well before Lester Jr.'s death in 2015.

¶ 96    Further, any claims for aiding and abetting inherently tied to Lester Jr.'s actions prior to 2011 could no longer be actionable, given that the underlying tort for breach of fiduciary duty against Lester Jr. no longer exists. See *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27-28 (2003) (quoting *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496 (1987) ("In Illinois, a claim for aiding and abetting includes the following elements: (1) *the party whom the defendant aids must perform a wrongful act which causes an* injury; (2) the defendant must be regularly aware of his role *** at the time he provides *assistance*; (3) the defendant must knowingly and substantially *assist the principal violation*.")). (Emphasis added). See also *Chadha v. North Park Elementary School Ass'n*, 2018 IL App (1st) 171958, ¶ 58 (claims for aiding and abetting are not independent torts, meaning that they "require underlying conduct that is tortious."). Thus, it is logical to conclude that where the statute of limitations has barred claims against the main tortfeasor, it should also apply to the defendant alleged to have aided and abetted such conduct within the same timeframe.

¶ 97    However, that does not end our analysis. We previously held that any alleged conduct taken by the co-trustees after Lester Jr.'s death was still actionable, as the complaint was filed in 2016, well within the five-year period of limitations. See 2019 IL App (1st) 181113-U, ¶ 60. Plaintiffs' claims against Leaf contain specific events that accrued after 2011, such as the abandonment of trust assets in December 2015, and we have already held that these "allegations were raised without delay, within the statute of limitations." *Id.* ¶ 61. Because, at the time this appeal was filed, the complaint had not yet been amended, both claims, of course, still suffer from relatively unclear and comingled timelines. But at this juncture, it appears that some portions of the claims against

Leaf after 2011 may still be pursued. Additionally, although the statutes of limitations for aiding and abetting and professional negligence differ, the underlying conduct for both claims appears to overlap which again will require further amendment and discernment by the plaintiffs.[14]

¶ 98    We also find plaintiffs' reliance on *Bank of America, N.A. v. Knight*, 875 F. Supp. 2d 837 (N.D. Ill. June 20, 2012), unpersuasive, as it is not only non-binding, but also distinguishable. There, the district court addressed whether, on a motion to dismiss, various claims against a defendant auditor for professional negligence and aiding and abetting a breach of fiduciary duty were barred by the two-year statute of limitations contained within the same accounting statute. *Id.* at 845-846. The court held that it could not determine if the statute of limitations applied based on the face of the complaint. *Id.* at 846. The court reasoned that the allegations of the complaint "outline[d] potential explanations other than fraud (or auditor negligence) for the decline and ultimate bankruptcy of the company." *Id.* (Internal quotations omitted).

¶ 99    The opposite is true here. Plaintiffs have alleged that Lester Jr., the co-trustees, and Leaf were ultimately responsible for the beneficiaries' financial damages due to fraud and professional negligence. As we have held before, the 1985 and 1986 letters from Lester III to Lester Jr. establish that plaintiffs had some kind of knowledge regarding malfeasance in the administration of the trusts. Thus, it is apparent from the complaint that the alleged malfeasance is, at least at this juncture, the only explanation for any compensatory damages suffered by the beneficiaries.

¶ 100   Accordingly, we find that the statute of limitations for the aiding and abetting claim applies to Leaf, in that events prior to 2011 that involve the conduct of Lester Jr. are barred. As to the statute of limitations for the professional negligence claim, events prior to 2014 would also appear

---

[14] We will further discuss any alleged conduct between Lester Jr. and Leaf between 2011 and Lester's death in 2015 in our *laches* discussion.

to be barred. Thus, the circuit court's dismissal of counts VII and VIII is affirmed in part but reversed in part as to any allegations alleged thereafter.

¶ 101                                    2. *Laches*

¶ 102   *Detterbeck I* also addressed the issues of *laches* with regard to the other defendants, but not to Leaf. Here, plaintiffs argue that the court correctly held that *laches* did not apply to Leaf because, although plaintiffs' delay in bringing claims against Leaf was unreasonable, Leaf's role as a corporation was distinctive from that of Lester Jr., where the company was likely to have records dating back to the beginning of the trusts' administration in 1973. Leaf disagrees, arguing that its actions were alleged to have occurred contemporaneously with Lester Jr., plaintiffs were not diligent in bringing suit against the company, and Leaf would suffer prejudice as the key witnesses, Lester Jr. and Dave Dahl, are now deceased.

¶ 103   "*Laches* is an equitable doctrine that precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party." *Noland v. Mendoza*, 2022 IL 127239, ¶ 32. "*Laches* is an affirmative defense asserted against a party " 'who has knowingly slept upon his rights and acquiesced for a great length of time *** and its existence depends on whether, under all the circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did.' " *Id.* (quoting *Tillman v. Pritzker*, 2021 IL 126387, ¶ 25)). "*Laches* turns on the 'inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties.' " *Id.* (quoting *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958)). "Two elements are necessary for the application of *laches*: (1) 'lack of due diligence by the party asserting the claim' and (2) 'prejudice to the opposing party.' " *Id.* ¶ 33 (quoting *Van Milligan v. Board of Fire & Police*

*Commissioners*, 158 Ill. 2d 85, 89 (1994)). "Whether *laches* applies depends on the facts of each case." *Id.*

¶ 104   In *Detterbeck I*, we found that *laches* applied to claims against Lester Jr. that arose between 2011 and Lester Jr.'s death in 2015. 2019 IL App (1st) 181113-U, ¶ 54. We reasoned that such events were "undoubtedly related" and that "this court would be hard-pressed to find that plaintiffs' inaction for 40 years does not constitute an unreasonable delay." *Id.* ¶ 52. Again, in accordance with our findings on the statute of limitations issue, we find the same logic applicable to Leaf's conduct. Its involvement with Lester Jr. throughout the years was also undoubtedly related, and plaintiffs did not bring suit against Leaf until after Dave Dahl and Lester Jr.'s death, despite a reasonable awareness of potential wrongdoing.

¶ 105   We then must address the second element of the *laches* analysis, whether such delay prejudiced Leaf. The circuit court determined Leaf was not prejudiced because of its existence as an accounting firm, which would assumably maintain adequate records over the course of administration. Thus, according to the circuit court, *laches* did not apply to Leaf because failure to bring suit against the company until decades later was overall less prejudicial.

¶ 106   On the one hand, the circuit court's reasoning aligns with our holding in *Detterbeck I*, where we found that the complaint had sufficiently alleged a violation of the accounting act based on the company's alleged awareness of the formation of the trusts and its intended beneficiaries. See *Long*, 397 Ill. App. 3d at 989. Further, one of the key witnesses to events of the earlier trust administration, Dave Dahl, has not been sued individually; rather, the company was, and we agree with the circuit court that it is reasonable to assume that the company, in theory, could possess documentation to defend against the claims outside of Dave Dahl's testimony. This is further

supported by the record in that discovery has already been conducted in this case, and Leaf was converted from a respondent in discovery to a full-fledged defendant.

¶ 107   On the other hand, in *Detterbeck I*, we dismissed any remaining claims against Lester Jr. based on *laches*, whom Leaf is alleged to have aided and abetted by engaging in professional negligence. In particular, although plaintiffs urged that the deaths of two key witnesses, Lester Jr. and Dahl, should not be considered prejudicial due to the availability of records and other witnesses, we disagreed. 2019 IL App (1st) 181113-U, ¶ 53. The record demonstrated that many of Lester Jr.'s misdeeds, such as structuring improper leases, were never formalized and never found. *Id.* Thus, any allegation that Leaf helped facilitate such conduct would likely lead to the same conclusion, that evidence of such alleged misdeeds simply may not be available. We also found that there would be "significant inequity" to John and Barbara to "defend the nebulous practices of a man who has died[.]" *Id.* We believe the same to be true here, where defending against an aiding and abetting claim based on the conduct of now-deceased trustee would also result in similar inequity and arguably does not logically square. See *Chadha,* 2018 IL App (1st) 171958, ¶ 58 (claims for aiding and abetting are not independent torts, meaning that they require underlying conduct that is tortious). Accordingly, we find that *laches* must also be applied to alleged activities by Leaf between 2011 to Lester Jr.'s death on both claims for aiding and abetting and professional negligence, given that such allegations against Lester Jr. are no longer operative.

¶ 108   In contrast, *laches* does not apply to the actions of Leaf allegedly conducted with John, Barbara, and LDE, as those claims are still actionable pursuant to *Detterbeck I* and *II*. Again, we reiterate that the timeline of events as set forth in the fourth amended complaint was not clear and requires significant amendment to clarify the exact timeline of such activities.

¶ 109   As noted in *Detterbeck II*, "it was not the circuit court's job to parse out the details of the complaint to conform to our holding in *Detterbeck I*." 2022 IL App (1st) 210042-U, ¶ 61. However, in this third appeal, affirming the circuit court's order in its entirety would result in the dismissal of some claims we found actionable in *Detterbeck I*, and thus would fail to protect the parties' settled expectation and the proper administration of justice, even if there was not a specific ruling as to Leaf on these two legal issues. See *Petre*, 356 Ill. App. 3d at 63. Thus, we conclude that the circuit court's full dismissal of counts VII and VIII of the fourth amended complaint was in error.

¶ 110   In sum, we affirm in part and reverse in part the circuit court's order. To the extent that allegations contained within counts VII and VIII reference any actions taken by Leaf in concert with Lester Jr. prior to his death in 2015, the circuit court's order is affirmed, and those counts are dismissed with prejudice. However, to the extent that such counts allege any actions taken by Leaf in concert with John and Barbara upon their appointment as co-trustees on August 24, 2015 and thereafter, the circuit court's order is reversed, and those allegations are restored. Plaintiffs have already acknowledged that they have been ordered to amend their complaint and should do so now in accordance with both *Detterbeck II* and this appeal. We reiterate our observation in *Detterbeck I* that virtually all counts of the fourth amended complaint comingle allegations between multiple parties, and must be amended to prevent further delay, confusion, and waste of court resources.

¶ 111                                  III. CONCLUSION

¶ 112   For the reasons stated, we affirm in part and reverse in part.

¶ 113   Affirmed in part and reversed in part, with directions.